## BORDEN against FITCH.

THIS was an action on the case for debauching the daughter and servant of the plaintiff, *per quod servitium amisit.* The declaration contained three counts. The first count was for debauching *Rebecca Borden,* the daughter of the plaintiff, *per quod,* &c. The second count was for enticing from the plaintiff's service, and debauching her daughter, *Rebecca,* for the space of ten weeks, *per quod,* &c. The third count stated, that *Rebecca Borden* resided with her mother, the plaintiff, and greatly assisted her in the business of her family ; that the defendant, by falsely representing to the said *Rebecca,* that his former wife was dead, and that he was then unmarried, induced and persuaded her to marry him in case her mother would consent ; and to obtain the plaintiff's consent, falsely represented to the plaintiff that his former wife was dead, and that he was then unmarried, by means of which false representation he induced the plaintiff to consent ; and the plaintiff, confiding in his representation, did consent, and the marriage was, thereupon, had between the defendant and the said *Rebecca ;* whereas in truth, and in fact, the lawful wife of the defendant was then living, and the defendant was not then unmarried, which the defendant well knew ; that the defendant, afterwards,

*A judgment rendered by a court of another state which has jurisdiction, neither of the subject of the action, nor the person of the defendant, is void, and will not be enforced in the courts of this state.*

*A judgment rendered in another state against a defendant who never appeared, and had no notice of the proceedings, is void.*

*A divorce obtained in Vermont by a husband from his wife, who resided in another state, and had no notice of the pendency of the proceedings, is void, and will not legalize a subsequent marriage contracted in this state.*

*A judgment, or decree, obtained on false, or fraudulent suggestions, is void.*

It *seems,* that a judgment obtained in the courts of another state, having jurisdiction of the subject of the suit, and in which the defendant has been duly notified to appear, is conclusive in the courts of this state.

Where a count, in a declaration, contains a sufficient cause of action, connected, however, with matter insensible and void, or not actionable, it will be intended, after verdict for the plaintiff, that damages were given only for the part that is actionable, and the judgment will not be arrested.

abandoned the said *Rebecca*, and left her wholly destitute of support, and still does neglect and refuse to maintain and support her; by means whereof the plaintiff has been, and still is, deprived of the service of the said *Rebecca*, who had been rendered unable to maintain herself, or assist the plaintiff; and that the plaintiff had expended divers sums of money, to wit, the sum of 500 dollars, about the nursing and maintaining of the said *Rebecca*. The cause was tried before Mr. J. *Platt*, at the *Orange* circuit, in *September*, 1816.

The defendant, *Stephen Fitch*, was married in 1784, in the state of *Connecticut*, of which he was then an inhabitant, to *Charlotte Sellick;* and they resided together, as man and wife, in the state of *Connecticut*, until some time in the year 1807, when they separated; during which period they had several children. In *September*, 1807, *Charlotte Fitch* presented a petition to the general assembly of the state of *Connecticut*, complaining of the cruel usage of her husband, who had, at various times, beaten her, and threatened to take away her life, and had so terrified her, that she was afraid to live with him, and had fled from his house for protection, and praying to live separately from him, and be divorced from his bed and board, and for a separate maintenance from him, and to have the government and guardianship of her two youngest children. The resolve of the general assembly stated, that the petition had been duly served on the defendant, and that the parties appeared and were heard, and that threats of cruelty of the defendant to his wife were proved: whereupon it was resolved, at the general assembly, held at *New-Haven*, in *October*, 1808, that the petitioner might, at her election, live and reside separately from the defendant, without being subject to his control, and with the privileges of a *feme sole;* and the sum of 150 dollars was ordered to be paid to her annually, by the defendant, for her maintenance, on condition, however, that she should cause the resolve to be recorded in the records of *New-Canaan*, where she resided.

The defendant's wife, after her separation from him, resided constantly in the state of *Connecticut*, and was living during the period of all the transactions hereafter mentioned. The defendant, in 1813, applied to the supreme court of the

state of *Vermont* for a divorce *a vinculo matrimonii*, which
was granted, at the term of that court, held in *August*, 1813.
The record of the decree of the court contained the fol-
lowing recital : " *Stephen Fitch*, of *Windsor*, in the county of
*Windsor*, and state of *Vermont*, having, by his petition, ad-
dressed to this court, stating, that he, on the 4th day of
*June*, in the year of our Lord, 1794, was lawfully married
to one *Charlotte Sellick*, then of *Stamford*, in the county of
*Fairfield*, and state of *Connecticut* ; and that the said *Char-
lotte*, among other causes and things, has been guilty of
wilful desertion for more than three years, with total ne-
glect of duty ; and, therefore, praying that a bill of divorce
may be granted him in the premises ; and it being shown to
the court, that the said *Charlotte* has been duly notified to
appear before this court, (if she see fit,) to show cause, if
any she have, wherefore the prayer of the said petition should
not be granted ; and the said *Charlotte*, not appearing, or
showing sufficient cause, this court having fully heard said
petition, and the evidence in support of the same, do order,
and decree, that the prayer thereof be granted ;" and the
marriage is, accordingly, declared null and void, to all in-
tents and purposes.    It did not appear that the defend-
ant's wife had any actual notice of the pendency of these
proceedings ; and the act of the legislature of *Vermont* re-
lative to divorces, required only a publication in the news-
papers, of the citation, in the case of non-resident defendants.

In *October*, 1814, the defendant applied to the plaintiff, a
widow, residing at *New-Windsor*, in the county of *Orange*,
to receive his two sons into her family, as boarders.  To this
the plaintiff, after deliberation, consented, and the defend-
ant then requested permission for himself to remain in the
family a short time, until he could ascertain whether his
children would be contented with their situation.    This re-
quest was also acceded to, and the defendant, on coming
to reside in the family, affected a deportment of the ut-
most mildness, benevolence, and piety.   He frequently
dwelt, in conversation, with peculiar tenderness, on his de-
ceased friends, and in connection with them often spoke
of his wife, using such ambiguous phrases, as " the departure
of his wife,"—" that his wife had departed ;" so that,

ALBANY,
January, 1818.

BORDEN
v.
FITCH.

from the manner of his expressions and the occasions on which they were introduced, he fully impressed all who heard him with the idea that his wife was dead. Soon after he was admitted into the plaintiff's family, he paid his addresses to her daughter, *Rebecca*, who was then of the age of twenty-five years, and materially assisted in the support of the family, by her needle-work. The consent of the daughter, and her mother, the plaintiff, who were acting under the full belief that the defendant was unmarried, was obtained, and the marriage took place about the 28th of *November*, 1814. On the very next day the defendant threw aside his assumed character, and commenced towards his new wife a conduct of extreme harshness and severity, though not amounting to personal violence, often raising gross and unfounded charges against her reputation and virtue, which were made the pretext for frequent threats and abuse, and finally, by his incessant persecution, her health and all her faculties were impaired. About a week after the marriage, it was discovered that the first wife of the defendant was still living, and although this circumstance was an additional source of disquiet, yet there was at first no suspicion as to the legal validity of the subsequent marriage. In the latter end of *January*, or the beginning of *February*, 1815, the defendant was required by the plaintiff to leave the house, and he removed, with the plaintiff's daughter, to lodgings which he had taken about three miles distant, where they continued a week, when application having been made to counsel, to take measures for the relief of the plaintiff's daughter, the defendant was arrested and imprisoned, on a charge of bigamy, by which means she was released, and returned to the plaintiff's family. The defendant was stated to be a man of considerable property, and evidence was produced of the good character of the plaintiff's daughter, and of loss of service.

At the trial, *Rebecca Borden* was produced as a witness, on the part of the plaintiff, and was objected to, on the ground that the witness was the defendant's wife ; in support of which objection the decree of divorce of the supreme court of *Vermont* was given in evidence, and hence arose

the question as to the validity of that divorce : the judge de-
cided that it was void; and the witness being admitted, the
defendant's counsel excepted to the opinion of the judge.

The judge charged the jury that the divorce granted in
*Vermont* was of no validity, as regarded the plaintiff's right
of action, and that the acquiescence of the plaintiff in the
cohabitation of the defendant with her daughter, under the
circumstances of the case, did not impair her right of action.
The defendant's counsel excepted to this charge, and the
jury found a verdict for the plaintiff for 5,000 dollars, being
the amount of the damages laid in the declaration.

There was a motion in arrest of judgment ; and also to
set aside the verdict.

*Bristed*, for the defendant. 1. As to the motion in arrest
of judgment. Several and distinct rights of action are blended
in the declaration. A plaintiff cannot join, in the same ac-
tion, a demand in his own right, and a demand in the right of
another. (*Hancock* v. *Haywood*, 3 *Term Rep.* 433. 1 *Chitty's
Plead.* 200.) Here the plaintiff, in the third count, joins her
own claim for the loss of the service of her daughter, with
the claim of her daughter to be supported by her husband,
the defendant. An action for a *tort*, must be brought in the
name of the person whose *legal* right is invaded. (*Dawes* v.
*Peck*, 8 *Term Rep.* 330. *Chitty's Plead.* 45, 46. 1 *Lev.* 247.
1 *Sid.* 375.) No action is sustainable against the de-
fendant; the second marriage being valid.

If the action is maintainable at all, it should have been
brought by the daughter, not the mother. The daugh-
ter has an action, on the case, for the injury arising from the
fraud practised upon her. (1 *Skinner*, 119. 1 *Bac. Ab.
Action on the case.* (K.) Damages cannot be twice re-
covered for the same injury ; and a recovery by the mother
will be no bar to the daughter's action.

The verdict, though general, cannot be amended. (*Hop-
kins* v. *Beedle*, 1 *Caines' Rep.* 347. 3 *Term Rep.* 433. *Brown*
v. *Dixon*, 1 *Term Rep.* 276. *Union Turnpike Company* v.
*Jenkins*, 1 *Caines' Rep.* 381. 391, 392, 394. *Stafford* v.
*Green*, 1 *Johns. Rep.* 505.) The whole proof substantially

BORDEN
v.
FITCH.

applied to the third count. (*Vaughan* v. *Havens*, 8 *Johns.*
*Rep.* 110 )

2. The evidence offered as to the cohabitation of the de-
fendant with a former wife ought not to have been received.
The first marriage in *Connecticut*, according to the laws of
that state, ought to have been proved. In an action for se-
duction of this kind, the same proof of the first marriage is
required as in an action for *crim. con.*, or on an indictment for
*bigamy*. Though, in ordinary cases, marriage may be shown
by reputation, cohabitation, or confession of parties, (*Fenton*
v. *Reed*, 4 *Johns. Rep.* 52. *Telts* v. *Forster*, *Taylor's N. C.*
*Rep.* 121. *Peake's Ev.* 263.) yet, in an action of *crim.*
*con.* and for the same, or, perhaps, a stronger reason, in this
action, it is necessary to show the validity of the first mar-
riage; that it was duly solemnized according to the law of
the state, or country, where it was celebrated. The *Con-*
*necticut* marriage act should have been produced, and, then,
proof that the marriage was celebrated according to that
act. (*Morris* v. *Miller*, 4 *Burr.* 2059. *East's P. C.* 470.
471.)

The plaintiff's daughter, in this case, was not a compe-
tent witness. It is admitted, in the declaration, that she
was the wife of the defendant; and it is well settled, that a
wife cannot be a witness for or against her husband, in a ci-
vil suit, except to prove the legitimacy or illegitimacy of
her children. (*Rex* v. *Inhabitants of Bramly*, 6 *Term Rep.*
330. *Peake's Ev.* 182.) If it is said that the witness is not
the lawful wife of the defendant, because he is married to
another who is still living ; we answer, that the decree of
divorce between the defendant and his first wife, by the su-
preme court of *Vermont*, is *conclusive* here.

Though judgments, on mere questions of property, are
evidence only between the parties, yet proceedings *in*
*rem*, or the sentences of ecclesiastial courts, in matrimonial
causes, are evidence against third persons. (*Peake's L. of*
*Ev.* 70—79. *Phillip's L. of Ev.* 223—234. *Gelston* v.
*Hoyt*, 13 *Johns. Rep.* 150. *S. C. in Error*, *Id.* 561. *Dutchess*
*of Kingston's case. Ambl.* 756. 11 *Stat. Trial*, 261.)

Again ; we contend, that under the constitution of the
*United States*, (art. 4. sec. 1. art. 3. sec. 2. art. 6. 1 *U. S.*

*Laws*, 63. *Martin* v. *Hunter's Lessee*, 1 *Wheat*. 304. *Jackson* v. *Barnes*, 3 *Binney*, 75.) this decree of the supreme court of the state of *Vermont* is binding and conclusive on this, and all other courts of the *United States*. In *Stark* v. *Chesapeake Insurance Company*, (7 *Cranch*, 420.) The supreme court of the *United States* admitted a *record* of a court of common pleas, in *Maryland*, as to naturalization, to be conclusive; and in *Mills* v. *Duryee*, (7 *Cranch*, 481.) it was decided that *nil debet* was not a good plea, to an action founded on a judgment of a court of another state, and that *nul tiel record* was the only proper plea. *Story*, J. in delivering the opinion of the court in that case, says, that "the act (26th *May*, 1790, ch. 11.) declares, that the record, duly authenticated, shall have such faith and credit as it has in the state court from whence it is taken. If, in such court, it has the faith and credit of evidence of the highest nature, viz. *record evidence*, it must have the same faith and credit in every other court. Congress have, therefore, declared the *effect* of the record, by declaring what faith and credit shall be given to it. It remains only, then, to inquire, in every case, what is the effect of a judgment in the state where it is rendered? "Were the construction contended for by the plaintiff to prevail, that judgments of the state courts ought to be considered *prima facie* evidence only, this clause in the constitution would be utterly unimportant and illusory. The common law would give such judgments precisely the same effect. It is manifest, however, that the constitution contemplated a power in Congress to give a conclusive effect to such judgments. And we can perceive no rational interpretation of the act of Congress, unless it declares a judgment conclusive, when a court of the particular state where it is rendered, would pronounce the same decision." If *nul tiel record* is the only proper plea in an action on a judgment of a court of record of another state, it follows, from the very nature and effect of that plea, that the judgment must be conclusive. (1 *Chitty's Pl.* 354. 480, 481. *Moses* v. *Macfarlane*, 2 *Burr.* 1009. 4 *East*, 311.)

The decision of the supreme court of the *United States*, on this long and much agitated question as to the validity or effect of the judgments of the courts of other states,

ALBANY,
January, 1818.

BORDEN
v.
FITCH.

must put the matter forever at rest. It is a decision conclusive, and binding on all other courts in the *United States*, and is the law of the land. It may be useful, however, to examine the course of decisions on the point, in this and other state courts.

In *Hitchcock* v. *Aicken*, (1 *Caines' Rep.* 460.) which is the leading case in this state, the opinions and reasoning of *Thompson*, J. and *Livingston*, J. though differing with the majority of the court, accords with the judgment of the supreme court of the *United States*, in *Mills* v. *Duryee*, in giving full and conclusive effect to the judgments of the courts of sister states. In *Le Conte* v. *Pendleton*, (1 *Johns. Cas.* 104.) in 1799, to an action of debt on a judgment in *Georgia*, the defendant pleaded two pleas, *nul tiel record*, and *nil debet*, and the court directed the defendant to elect one of the two pleas, and strike out the other. The defendant, afterwards, elected the plea of *nil debet* , but the court did not decide on it. (*Cole. Cas.* 79.) In *Rush* v. *Cobbett*, (2 *Johns. Cas.* 256.) in 1801, the court declined deciding on the validity of the plea of *nil debet.* In 1803, in *Post* and *La Rue* v. *Neafie*, (1 *Caines*, 484.) the defendant pleaded *nul tiel record*, (S. C. note.) and the court decided the plea to be improper, and ordered a repleader ; and *Kent*, J. in *Hitchcock* v. *Aickin*, (1 *Caines*, 482.) considered that decision as leading to the conclusion, that if the judgment of another state was not to be treated in the pleadings as a *record*, it could not have the same obligatory force. Then, *e converso*, if it is to be treated as a *record*, it must have the same obligatory force ; and if the judgment of the supreme court of the *United States*, in *Mills* v. *Duryee*, is the law, the decree of the *Vermont* court, as to the *divorce*, must be conclusive on this court. The decision in *Hitchcock* v. *Aicken* was confirmed, it is true, by subsequent adjudications, but with some modification ; and the court have avoided deciding on the effect of a decree of a divorce in another state, where the parties were married there, or out of this state. (*Post* v. *Neafie*, 3 *Caines*, 22—33. per *Spencer*, J. *Jackson* v. *Jackson*, 1 *Johns. Rep.* 425. *Kilburn* v. *Woodworth*, 5 *Johns. Rep.* 37. *Hubbell* v. *Coudrey*, 5 *Johns. Rep.* 132. *Robinson* v. *Ward*, 8 *Johns. Rep.* 86. *Fenton* v. *Garlick*, 8

*Johns. Rep.* 194. *Taylor* v. *Bryden,* 8 *Johns. Rep.* 173. *Pawling* v. *Bird's Executors.* 13 *Johns. Rep.* 192. *Walsh* v. *Dunkin,* 12 *Johns. Rep.* 99.) In *Taylor* v. *Bryden,* the court says, that when the party has once litigated his case before a court of competent jurisdiction, and where no fraud or unfairness is pretended, every doubt and every presumption arising on a matter in *pais* ought to be turned against him; and that such judgment was not to be impeached but on positive proof of unfairness or irregularity.

The decisions in all the cases in this state, are on judgments at common law, except that of *Post* v. *Neafie,* which was on a decree of the court of chancery of *New-Jersey,* but by a statute of that state, such a decree is made tantamount to a common law judgment. Divorces belong to the cognizance of *ecclesiastical* courts, in *England,* which are courts of exclusive jurisdiction, and of the court of chancery here. But in *England,* the ecclesiastical court pronounces only a divorce *a mensa et thoro;* divorces *a vinculo matrimonii* are by act of parliament. The supreme court in *Vermont,* by statute, had the sole and exclusive power and authority to grant bills of divorce from the bonds of matrimony, for impotency, adultery, or wilful desertion for three years, and also where either party shall have been absent seven years, if unheard of during that time; and also to grant bills of divorce from bed and board, or from the bonds of matrimony, for intolerable severity, as the court may judge proper, and the nature of the case may require In *Gelston* v. *Hoyt,* (13 *Johns. Rep.* 141. 561.) the court held that such a decree of a court of competent and exclusive jurisdiction was conclusive, on the principle settled in the *Duchess of Kingston's case.* (11 *St. Tr.* 260.)

As to the mode of proceeding to obtain these divorces, prescribed by the statute in *Vermont,* it may be observed, that our act, (1 *N. R. L.* 489. sess. 36. ch. 95. s. 9.) authorizes the bill to be taken *pro confesso,* where the defendant is out of the state, or cannot be found, or is concealed, after a publication of the order for appearance, for eight weeks; and if no appearance is entered after such publication, the court pronounces its decree in the same manner as if the party

had appeared.(a)   What should we say, if a court of *Ver-*
*mont* should declare a second marriage void, though the
party had been divorced *a vinculo*, by the court of chance-
ry of this state, because such a decree had been given on
taking a bill *pro confesso*, against a party out of the state ?

But whatever may be the effect of the reasoning from the
principles of the common law, the authority of the decision
of the supreme court of the *United States* cannot be question-
ed, and must be conclusive.   Indeed, it was time that some
decision of that court should be made, to settle the law on
the subject ; so that, in future, there might be a harmony and
consistency in the decisions of the courts of the several
states, on constitutional questions.   It would seem that the
provision of the constitution of the *United States*, and the
act of congress passed in pursuance of it, were intended,
gradually, to produce uniformity in the laws and decisions of
the several states, as best calculated to bind together, in per-
manent and prosperous union, the numerous members of
our multiform body politic.   There are, then, three dif-
ferent doctrines or opinions floating in the state courts on
this clause of the constitution of the *United States* :

1. That of this court, that judgments of *sister* states, like
*foreign* judgments, are only *prima' facie* evidence :

2. In *North Carolina*, *South Carolina*, and *Pennsylvania*,
they are held as conclusive as in the state in which they were
rendered : (*Camer. & Norw. Rep.* 486.   2 *Bay's Rep.* 485.
2 *Dallas*, 302.)

3. The supreme court of *Massachusetts* have taken a mid-
dle ground, between these opposite decisions of other states,
and hold a judgment of a court of a sister state, not to be so
high as a *domestic*, nor so low as a *foreign* judgment ; but
to be, as some learned philologists define a proposition,
"neither significant nor insignificant, but between signi-
fication and no signification."   In *Bissel* v. *Briggs*, (9
*Mass. Rep.* 462.) PARSONS, Ch. J. who delivered the opi-
nion of the court, said, that judgments of the courts of other of

(a) The court of chancery does not, of *course*, grant a decree of divorce *a vinculo*
*matrimonii*, in all cases, though the adultery be admitted, or the bill be taken *pro con-*
*fessa.   Betts* v. *Betts*, *Williamson* v. *Williamson*, (1 *Johns. Ch. Rep.* 197. 488.)

the *United States*, were not to be considered as *foreign* judgments, the merits of which might be inquired into, as well as the jurisdiction of the courts rendering them; nor were they to be considered as *domestic* judgments, rendered in their own courts of record, because the *jurisdiction* of the courts rendering them was a subject of inquiry. But that such judgments, so far as the court rendering them had jurisdiction, were entitled to full faith and credit; and when declared upon as evidences of debts, or promises, the jurisdiction of the courts rendering them might be inquired into, on the general issue, but not the merits of the judgments.

Again; the daughter ought not to have been admitted to give evidence of a promise of marriage; because, in an action for seduction, she cannot be a witness to prove such a promise in aggravation of damages, since she herself has a right of action for a breach of promise; (*Foster* v. *Scofield*, 1 *Johns. Rep.* 297.) nor of the marriage itself, because she has her action also for the injury. (*Skinner's Rep.* 119.)

Nor can she give evidence of bad treatment by the defendant, if considered as his *wife*, nor if considered as a *feme sole*, for the *gist* of this action is the mother's loss of service, not the daughter's ill treatment.

Another objection is, that the resolution of the general assembly of *Connecticut* was tantamount to a divorce *a mensa et thoro*, which would protect the defendant from an indictment for *bigamy*, and, consequently, must be a bar to a suit for seduction, but would not prevent him from applying for a divorce *a vinculo matrimonii*. (*Pawling* v. *Bird's Executors*, 13 *Johns. Rep.* 208.) That the *domicil* of the wife is that of her husband, is a sufficient answer to her not being in *Vermont* at the time of the sentence there. (*Jackson* v. *Jackson*, 1 *Johns. Rep.* 432. 13 *Johns. Rep.* 208.)

It may be remarked that in all the cases decided by this court, where this question has arisen, the plaintiffs have been citizens of this state, claiming to enforce the judgment of another state here. In the present case, the defendant claims protection here for rights granted to him by the highest competent legislative and judicial authority of another state.

*P. W. Radcliff*, and *T. A. Emmet*, contra. 1. As to the causes in arrest of judgment. It is true the daughter may maintain her action for a *tort*, and may not the mother also? In case of a battery of the wife, the husband and wife may bring a joint action, and the husband may also bring, in his own name, an action of trespass, *per quod consortium amisit.* So, also, in the case of master and servant. A wrong may produce injury to two persons, each of whom may have his action. Matter, not actionable, may be stated in the declaration by way of *inducement ;* and it is no ground for arresting the judgment. The court will intend that the damages were given for the actionable part only. (*Steele* v. *West. Inl. Lock Navig. Co.* 2 *Johns. Rep.* 283. *Phettiplace* v. *Steere, Id.* 442. 2 *Johns. Cas.* 22. n. (*a*).) There is but one injury sued for by the plaintiff; the rest of the matter stated is mere historical narration, or by way of inducement. The objection amounts to this, that matter of inducement is stated, which would be a cause of action to another person. The defect is *amendable.* (*Stafford* v. *Green,* 5 *Johns. Rep.* 505.) The evidence given applies to the first and second counts, and judgment may be entered on them, though the third count is bad.

2. As to the bill of exceptions. The defendant must be confined to the points on which the judge's opinion was given, and to which the exceptions at the trial were taken. (*Graham* v. *Carman,* 2 *Caines' Rep.* 168, 169. *Frier* v. *Jackson,* 8 *Johns Rep.* 507.)

In all cases, except *bigamy* and *crim. con.* proof of cohabitation, connected with other evidence of a similar kind, is sufficient to prove a marriage. (*Morris* v. *Miller,* 4 *Burr.* 2057. 9 *Mass. Rep.* 414. 492.) Proof of the actual marriage is not necessary, except in those two cases. (*Phillip's Ev.* 307.) The proof here was, however, admissible as preliminary to the evidence of the act of the legislature of *Connecticut,* decreeing a separation ; and being part of the matrimonial history of the defendant, for a period of 23 years. But the real and great question in this case, on which the competency of the daughter as a witness depends, is, whether the decree of divorce by the court of *Vermont,* is con-

clusive here? That decree proceeds on the ground of the *wilful desertion* of the wife for three years; she residing during all that time in the state of *Connecticut*, never having been, at any time, within the jurisdiction of *Vermont*, and living under the protection of the act of the legislature of *Connecticut*, decreeing her separation from her husband, and allowing her *alimony*, during the time she should choose to live so separate.

The *Vermont* decree would not be valid and conclusive here, if it were merely a judgment for the payment of money. From 1803 to the present time, the law of this state has been, "that a judgment in a sister state is only *prima facie* evidence of a debt," and is not conclusive here. (*Hitchcock* v. *Aickins*, 1 *Caines*, 460.) In *Jackson* v. *Jackson*, (1 *Johns. Rep.* 426. 432.) *Spencer*, J. in delivering the opinion of the court, says, "The case of *Hitchcock & Fitch* v. *Aicken* must, as respects this court, be an authority for saying, that a judgment obtained in a sister state is liable to be impeached in a suit brought on it here, notwithstanding there may have been a full and fair trial in the original suit." In 1809, 1810, and again in 1816, the doctrine is asserted and repeated, that "It is well settled, that a judgment in another state is to be considered here as a *foreign* judgment, in every respect, except in the mode of proving it, which is regulated by a law of the *United States*. It is only *prima facie* evidence of a debt," &c. (*Hubbell* v. *Cowdry*, 5 *Johns. Rep.* 132. *Taylor* v. *Bryden*, 8 *Johns. Rep.* 173. *Paulding* v. *Bird's* Executors, 13 *Johns. Rep.* 205.) In all these cases, the defendant *appeared* in the original suit and vindicated his right. In no case is it even *doubted*, for a moment, that if the defendant did not appear, or had no opportunity to defend himself, the judgment would not be conclusive. The last decision was made three years after that of the supreme court of the *United States*, in *Mills* v. *Duryee*. In *Kilburn* v. *Woodworth*, (5 *Johns. Rep.* 41.) which was a suit commenced in *Massachusetts*, by an attachment of goods, without any personal notice, the court say, that the judgment is not even, *prima facie*, evidence, sufficient to support an *assumpsit*; and that to bind a defendant personally

by a judgment, when he had not been personally summoned, nor had notice of the proceedings, would be contrary to the first principles of justice. (See also, 8 *Johns. Rep.* 86. 194. 3 *Wils.* 397. *Buchanan* v. *Rucker,* 9 *East,* 192.) So, in regard to laws or adjudications of other states or countries, exempting or discharging defendants from liability, our court does not regard the *foreign* law. (*Smith* v. *Spinolla, Smith* v. *Smith,* 2 *Johns. Rep.* 198. 235. *Sicard* v. *Whale,* 11 *Johns. Rep.* 194.)

In most of the cases, also, the court, besides the objection of its being against the principles of natural justice, have proceeded on the ground of *a want of jurisdiction* in the court rendering the judgment. In the case of *Slocum* v. *Wheeler,* (1 *Day's Conn. Rep.* 429—449.) lately decided in the supreme court of errors of *Connecticut,* (*June,* 1816,) the court say, that " the sentence of a court that has not jurisdiction of the person, the process, and the subject matter, is an entire nullity, and may collaterally be disallowed." In that case, the sentence of the district court of the *United States,* sitting as a court of admiralty, was brought incidentally into question, and the court say, that to render it conclusive, it must appear that the district court had jurisdiction of the *subject matter,* and whether it had or not, the state courts were competent to examine and decide ; (*Rose* v. *Himely,* 4 *Cranch,* 241. 243. *Cheriot* v. *Foussat,* 3 *Binney,* 220.) and Ch. J. *Reeve,* in *Grumon* v. *Raymond,* (1 *Day's Conn. Rep.* 40. 45.) lays it down, that where there is a want of jurisdiction over the person, as in the *Marshalsea,* case, (10 *Co.* 70.) or over the cause, or over the process, it is the same as though there was no court. It is *coram non judice.* The same principle has been recognised and applied in many other cases ; (*Bartlett* v. *Knight,* 1 *Mass. Rep.* 410. *Bissel* v. *Briggs,* 9 *Mass. Rep.* 462. 13 *Johns. Rep.* 207.) and in the case of *Mills* v. *Duryee, Story,* J. impliedly admits, that if the defendant had not had notice of the suit, or had not been arrested, the judgment could not have been held conclusive.

If, then, such a judgment, in a sister state, is not conclusive in cases of *property, a fortiori,* it cannot be so, where not only property, but the most important relation in life is

concerned. The principle cannot be weaker in its application in proportion as the importance and dignity of the subject matter is increased. The distinction attempted to be made, between a plaintiff coming to assert a right, or claim a benefit, or a defendant claiming merely an exemption from liability, is fallacious and unsound, when applied here. The doctrine for which we contend, applies with equal, if not greater force, to cases of divorce. Not only reason and justice, but the authorities which have been cited, are in favour of its application. In the case of *Jackson* v. *Jackson*, (1 *Johns. Rep.* 430.) the Attorney General, (*Woodworth*,) who argued for the conclusiveness of the *Vermont* decree, admitted, that if the court had pronounced the decree, without having the parties before them, it would have been void. That was a suit for *alimony*, allowed by the decree, and it appeared by the *record*, that both parties were before the court; yet this court refused to sustain this suit. By refusing to give the decree effect, as to alimony, the court virtually denied its efficacy as to the divorce. The place where the parties were married makes no difference in the application of the principle. The contract of marriage is personal, and of universal obligation. It is not of a local nature; nor is it to be supposed to be entered into with reference to the law of a particular place. *Huberus*, (*Tom.* 2. 373. 375, 376. *B.* 1. *Tit.* 3.) holds, that a marriage, contracted any where, is binding every where; that a marriage, *in fraudem legis*, is null and void; and where a party goes into a new jurisdiction, he carries with him all his immunities and disabilities; and becomes subject to all the disabilities imposed upon him by the laws of the country where he happens to reside.

In the case of *Barber* v. *Root*, (10 *Mass. Rep.* 260.) *Sewall*, J. remarks on the law of *Vermont*, under which the decree was pronounced, in the present case, in terms of strong indignation. He says, " that this assumed and extraordinary jurisdiction is an annoyance to the neighbouring states, injurious to the morals and habits of the people; and the exercise of it, for these reasons, is to be reprobated in the strongest terms, and to be counteracted by legislative provisions in the offended states."

The decision of the supreme court of the *United States*, in *Mills* v. *Duryee*, goes no further than to declare the *effect* of a judgment, by a court of another state having jurisdiction of the parties. The point decided was, that *nul tiel record* was a proper plea to an action of debt, on a judgment of a court of another state. *Story*, J. lays great stress on the fact, that the party had *full notice* of the suit, having been arrested and held to bail, so that it would be held conclusive in the state where it was rendered. *Johnson*, J. dissented. He did not think that the constitution, or act of Congress, required, that the court should go so far, as to allow the plea of *nul tiel record*, apprehensive that it might lead the court into difficulty and embarrassment, in preventing the execution of judgments irregularly and unjustly obtained. "There are," he says, "certain eternal principles of justice, which never ought to be dispensed with, but when compelled by some statute ; one of those is, that jurisdiction cannot be justly exercised by a state, over property not within the reach of its process, nor over persons not owing them allegiance, or not subjected to their jurisdiction, by being found within their limits. But if the states are at liberty to pass the most absurd laws on this subject, and we admit a course of pleading, which puts it out of our power to prevent the execution of judgments obtained under those laws, certainly an effect will be given to the article of the constitution, in direct hostility to the object of it. I will not now undertake to decide, nor does this case require it, how far the courts of the *United States* would be bound to carry into effect such judgments, but I am unwilling to be precluded, by a technical nicety, from exercising our judgments at all upon such cases."

It is fair to infer, then, that the supreme court of the *U. S.* did not intend to go beyond the principle laid down by *Parsons*, Ch. J. in the case of *Bissel* v. *Briggs*, and who has given a very sound and able exposition of the act of Congress. The same doctrine was held by *Sedgwick*, J. in 1805. (*Bartlett* v. *Knight*, 1 *Mass. Rep.* 401. 409.) This doctrine is, also, adopted by the courts in *Kentucky*. (*Rogers* v. *Coleman*, *Harding's Rep.* 418.) Courts of other states, though su-

ALBANY,
January, 1818.

BORDEN
v.
FITCH.

preme within their respective states, yet, in regard to other states, are, *pro tanto*, courts of *limited* jurisdiction. This doctrine, so ably and fully settled, in *Massachusetts*, *Connecticut*, and *Kentucky*, is agreeable to the principle of the *English* law, as laid down by Ch. J. *Willes*, in *Sollers* v. *Lawrence*, (*Willes' Rep.* 413. 416.) that in an action founded on a judgment of a court of record, of limited jurisdiction, it must appear, by what is set forth on the record, that it had jurisdiction, and if sufficient be stated for that purpose, every thing will be intended in favour of the judgment, and that the court acted right, unless the contrary appears on the record.

Again; a *record*, though conclusive proof that the decision, or judgment of the court, was as is there stated; yet it is not conclusive, as to the truth of allegations which were not material or traversable. (*Co. Litt.* 352. b. *Phillips' Ev.* 219.) Now, as the statute of *Vermont* made it perfectly immaterial whether Mrs. *Fitch* was a resident of that state or not, or whether she was actually notified of the proceedings or not, it was competent for the plaintiff to prove the negative of those facts.

Again; courts do not regard any proceeding as matter of *record*, until it is *enrolled*. (*Croswell* v. *Byrnes*, 9 *Johns. Rep.* 287. 290.) But this decree has never been enrolled. It contains no account of the previous proceedings, which are important parts of the record, to show that the directions of the statute have been observed.

But admitting, even, that it is a record, and that the decree is to have the conclusive effect for which the defendant's counsel contend; still, we insist, it may be impeached on the ground of *fraud*. The principle of evidence is, " that a judgment of a court of exclusive jurisdiction, directly upon the point, is conclusive between the *same parties*, upon the same matter coming incidentally in question in another court for a different purpose." (*Dutchess of Kingston's case*, 11 *State Tr.* 261. *Phillips' Law of Ev.* 242.)   " But though sentences are conclusive, and cannot be impeached from within, yet, like all other acts of the highest judicial authority, they are impeachable from without. Fraud is an

extrinsic collateral act, which vitiates the most solemn proceedings. Lord *Coke* says, it vitiates all judicial acts, whether ecclesiastical or temporal." (*Fermor's Case*, 4 *Co. Rep.* 78. *b*. *Phillips' Law of Ev.* 224. *note.* *Doug.* 421. 2 *Saund.* 159. *note.* Per *Thompson*, J. 1 *Caines*, 461.) This is not a case of a *conflictus legum.* The legislature of *Connecticut* passed an act to which full faith and credit is to be given, and which must, like every other record, be conclusive evidence of the facts contained in it. By this act, it was made lawful for Mrs. *F.* to live separate from her husband. The decree in *Vermont* says that she was, while thus living separate under the authority of the act in *Connecticut*, guilty of the crime of *wilful desertion.* How, then, does the decree in *Vermont* stand, in regard to the act of the *Connecticut* legislature? Can a court in *Vermont* repeal an act of the legislature of another state? This court must say, what we must presume the court in *Vermont* would have said, had this act been placed before them. The defendant, by withholding this act from the knowledge of the court, and by false the suggestion of the *wilful desertion* of his wife, has fraudulently obtained the decree of divorce. If this *Vermont* decree is to have full and conclusive effect every where, it changes, in *Connecticut*, the situation in which *Charlotte Sellick* was placed, by the act of the legislature of that state, and destroys all the rights she acquired under it. Look at the consequences of this state of things. If the legislature of *Vermont* can authorize a decree of divorce, on a residence for three years, of the party seeking it, it may be granted on a residence for three months, or three weeks. It is only for a discontented husband to go to some watering place in *Vermont*, on a party of pleasure, and there obtain a divorce. Nay, if the *auri sacra fames* of a venal profession should induce them to obtain an act of the legislature further to facilitate divorces, a husband residing here might write to his attorney in *Vermont*, and obtain a divorce by the return of the mail.

It is true that the act relative to the court of chancery authorizes the taking bills *pro confesso* here, where the defendant is out of the state; but the act is very cautious and guarded. The order for appearance must

be published for eight weeks successively, and though the bill may be taken *pro confesso,* at the expiration of that time, if the party does not appear, yet the de-
cree is not *final.* The party has *one year* after notice in writing of the decree, to come in and be heard, and *seven years,* if he has had no such notice; and if he appears within the time, the proceedings go on as if there had been no de-
cree, which is not final until after the seven years; and the plaintiff who has taken the bill *pro confesso,* before he can ob-
tain any benefit under the decree, must give security to make restitution, in case the defendant should appear and defend the suit within the time allowed for that purpose. There is no analogy, then, between the two cases; and the *argumentum ad hominem* can have no effect.

*Fisk,* in reply, observed, 1. That mere cohabitation, or reputation, was not sufficient evidence of the marriage of the defendant with his first wife. (*Horn* v. *Noel,* 1 *Camb. N. P. Rep.* 61. *Price's Exchq. Rep.* 81. *Fenner* v. *Lewis,* 10 *Johns. Rep.* 38.)

2. That in the cases which had been cited, and in which the court considered the judgments of courts of other states as *prima facie* evidence only, the plaintiff came for the pur-
pose of enforcing the judgment; but here the question as to the judgment arises *incidentally,* or collaterally, and, there-
fore, is to be regarded as final and conclusive. This is the true distinction, and is clearly laid down by Lord Ch. J. *Eyre,* in *Phillips* v. *Hunter,* (2 *Hen. Bl.* 402. 410.) " It is in one way only," he says, " that the sentence, or judgment of the court of a foreign state, is examinable in our courts; and that is, when the party who claims the benefit of it, ap-
plies to our courts to enforce it. When it is thus volunta-
rily submitted to our jurisdiction, we treat it, not as obliga-
tory to the extent to which it would be obligatory, perhaps, in the country in which it was pronounced, nor as obligato-
ry to the extent to which, by our law, sentences and judg-
ments are obligatory; not as conclusive, but as matter *in pais,* as consideration, *prima facie,* sufficient to raise a pro-
mise : we examine it, as we do all other considerations of promises, and for that purpose we receive evidence of what

the law of the foreign state is, and whether the judgment is warranted by that law. *In all other cases*, we give entire faith and credit to the sentences of *foreign* courts, and consider them as conclusive upon us." " The judgment, proper, or improper, must stand." So, in *Meadows* v. *The Dutchess of Kingston*, (*Ambl.* 756. 761.) Lord *Apsley* makes the same distinction, and lays down the rule, " that wherever a matter comes to be tried in a *collateral* way, the decree, sentence, or judgment of any other court, having competent jurisdiction, shall be received as conclusive evidence of the matter so determined." *Phillips*, also, in his treatise on Evidence, which has been cited, lays down the same rule. (p. 243.) It is, therefore, wholly unnecessary, in this case, to question the decisions of this court in cases where the party has brought his action here on the judgment of another state. But if it were necessary, we insist that the decision of the supreme court of the *United States*, in *Mills* v. *Duryee*, on that question, must be conclusive.

The legislature of *Vermont* has an undoubted right to regulate marriages and divorces, and full faith and credit are to be given to their public acts and decrees on the subject. The proceeding, in *Vermont*, was in a court having both chancery and common law jurisdiction. We are not to presume that the legislature, or courts of that state, will abuse their power.

THOMPSON, Ch. J., delivered the opinion of the court. Every material question in this case, turns upon the effect which the *Vermont* divorce shall be deemed to have upon the former marriage of the defendant. If he was thereby absolved from the marriage contract with his former wife, his second marriage was lawful, and the plaintiff could not sustain the present action ; nor could her daughter, who has been married to the defendant, be a witness. But if he was not legally divorced, his former wife being still living, his marriage with the plaintiff's daughter was illegal and void, and she was a competent witness.

The evidence in this cause shows, that when this divorce was obtained in *Vermont*, the defendant's former wife was living in *Connecticut*, separated from him, by virtue of an

act of the legislature of that state, which, from its terms,
may be deemed a divorce *a mensa et thoro.* This separa-
tion was to continue during the pleasure of the wife, and the
defendant was subjected to the payment of 150 dollars, annu-
ally, to her, by way of alimony. It also appears from the case,
that the defendant's former wife never was in the state of *Ver-
mont*, nor in any manner personally notified or apprised, at
the time, of the proceedings in *Vermont* to obtain the di-
vorce. She did not, in any manner, by her agent, or attor-
ney, appear, or make any defence against such proceedings.

The first question is, whether such proceedings, in *Ver-
mont*, were not absolutely void. To sanction and give va-
lidity and effect to such a divorce, appears to me to be con-
trary to the first principles of justice. To give any binding
effect to a judgment, it is essential that the court should
have jurisdiction of the person, and of the subject matter;
and the want of jurisdiction is a matter that may always be set
up against a judgment, when sought to be enforced, or where
any benefit is claimed under it. The want of jurisdiction
makes it utterly void, and unavailable for any purpose.
The cases in the *English* courts, and in those of our sister
states, as well as in this court, are very strong to show that
judicial proceedings against a person not served with pro-
cess to appear, and not being within the jurisdiction of the
court, and not appearing, in person, or by attorney, are
null and void. In *Buchanan* v. *Rucker*, (9 *East*, 192.) The
court of K. B. in *England*, declared, that the law would not
raise an *assumpsit* upon a judgment obtained in the island of
*Tobago*, by default, when it appeared, on the face of the
proceedings, that the defendant was not in the island when
the suit was commenced, and that he had been summoned
by nailing a copy of the declaration on the court house door.
The court said, it would have made no difference in the
case, if such proceedings were admitted to have been valid
by the laws of *Tobago.* In the supreme court of *Massachu-
setts*, Ch. J. *Parsons*, in *Bissell* v. *Briggs*, (9 *Mass. Rep.* 464.)
lays down the principle very clearly and distinctly, that be-
fore the adoption of the constitution of the *United States*,
and in reference to foreign judgments, it was competent
to show that the court had no jurisdiction of the cause;

and if so, the judgment, if set up as a justification for any act, would be rejected without inquiring into the merits. The same rule would apply where the party, in whose favour the judgment was, came to enforce it in another court. He proceeds, very ably, to examine the question how far the judgments of courts in sister states, are made conclusive by the constitution; and contends, that neither the constitution, nor the act of congress, prevents the court, where such judgment is set up, from examining into the jurisdiction of the court where the judgment was rendered; and, such court, he observes, must have jurisdiction both of the cause and of the person; that if a court of any state should render a judgment against a man, not within the state, nor bound by its laws, nor amenable to the jurisdiction of its courts, it would be void.

So, also, the superior court of *Connecticut*, in the case of *Kibbe* v. *Kibbe*, (*Kirby*, 119.) refused to sustain an action on a judgment in *Massachusetts*, on the ground that the judgment debtor had not been personally served with process to compel his appearance in the original cause; and that, therefore, the court, where the judgment was obtained, had proceeded without any jurisdiction of the cause. The same principle governed the decision of the supreme court of *Pennsylvania*, in the case of *Phelps* v. *Holker*, (1 *Dall.* 261.) The same doctrine has been repeatedly recognized in this court. The cases of *Kilburn* v. *Woodworth*, (5 *Johns. Rep.* 41.) *Robinson* v. *Executors of Ward*, (8 *Johns. Rep.* 90.) *Fenton* v. *Garlick*, (8 *Johns. Rep.* 197.) *Pawling* v. *Bird's Executors*, (13 *Johns. Rep.* 192.) are abundantly sufficient to show the light in which we have viewed such judgments. We have refused to sustain an action here, upon a judgment in another state, where the suit was commenced by attachment, and no personal summons or actual notice given to the defendant, he not being, at the time of issuing the attachment, within such state. In such cases we have considered the proceedings as *in rem*, which could only bind the goods attached, and that the judgment had no binding force *in personam*. This principle is not considered as growing out of any thing peculiar to proceedings by attachment, but is founded on more enlarged and general principles. It

is said by the court, that to bind a defendant personally by a judgment, when he was never personally summoned, nor had notice of the proceedings, would be contrary to the first principles of justice; and that, whether the proceedings were valid, and according to the course of the court in the place where such judgment was obtained, or not, would make no difference. It must, then, be taken, I think, as the settled law of this state, that a judgment obtained in a sister state against a person not being within the jurisdiction of the court, nor having been served with process to appear, nor having appeared to defend the suit, will be absolutely void. This principle must apply equally to a divorce, as to any other judgment. These are principles, too, that have been recognized and sanctioned in the state courts under the constitution and law of the *United States*, as now existing. In the case of *Barber* v. *Root*, (10 *Mass. Rep.* 262.) Mr. Justice *Sewell*, in pronouncing the opinion of the court, animadverts, with great indignation and severity, upon divorces obtained like the one set up in this case. The laws of *Vermont*, says he, which authorize the supreme court of that state to proceed in suits for divorce instituted in favour of persons resident, for a time, but having no settled *domicil* within the state, against persons resident and domiciled in other states, who are not, and never have been, amenable to the sovereignty of the state of *Vermont*, upon allegation of offences not pretended to have been committed within the state, or contrary to the peace, morals, or economy of the society there, or in violation of any contract subsisting, or which has ever been recognised there, in short, where no jurisdiction of the parties, or of the subject matter, can be suggested or supposed, are not to be justified by any principles of comity which have been known to prevail in the intercourse of civilized states; and the exercise of such authority, he adds, is to be reprobated in the strongest terms.

The case of *Mills* v. *Duryee*, (7 *Cranch*, 481.) in the supreme court of the *United States*, has been very much pressed upon us, as a binding and controling decision, as to the conclusiveness of this divorce in *Vermont*. Although I have a very strong conviction, that the constitution of the *United*

*States* and law of Congress cannot be applied to a judgment which we consider void upon the first principles of justice, so as to make it conclusive upon us, yet, the very high respect I entertain for that court, would make me hesitate, and doubt the correctness of my own judgment, did I believe it to have been the intention of that court, thus far to extend the construction of the constitution and laws of the *United States.* But I cannot persuade myself that it was so intended. And certain I am, that the case before that court required no such construction. It is true, that some of the observations of the learned judge, who pronounced the opinion of the court, might tend to such a conclusion. But these observations must be taken in reference to the facts in the case, and to the particular question before the court. The case presented a question of pleading ; whether *nil debet,* or *nul tiel record,* was the proper plea to an action of debt, brought in the circuit court of the district of *Columbia,* upon a judgment rendered in the supreme court of this state. It was held that *nul tiel record* was the proper plea. It was said, that if the *record be conclusive between the parties,* it cannot be denied, but by the plea of *nul tiel record ;* and that it was conclusive in that case, cannot be doubted. " The defendant," says Mr. J. *Story,* " had full notice of the suit; for he was arrested and gave bail, and it is beyond all doubt, that the judgment of the supreme court of *New-York* was conclusive upon the parties in that state, and must, therefore, be conclusive here also." That case will very plainly admit of the construction then, that it was intended only to decide, that the judgment was conclusive where the defendant was arrested, or had in some way appeared, and had an opportunity of defending the original suit. This construction is fortified by what fell from Mr. J. *Johnson,* who dissented from the opinion of the court. His remarks show very clearly, that he did not understand the court, as deciding that they were bound to consider and carry into effect, as conclusive, judgments obtained upon attachments of property merely, when there was no process served on the defendant, within the jurisdiction of the court rendering the judgment, or he made in some manner personally amenable to such jurisdiction.

I have thus far considered this case, upon the assump-
tion, that this divorce would be valid and conclusive in the
courts in the state of *Vermont*, and should not even then
deem it so here. But I very much question, whether it
would be so considered in *Vermont*. It was a divorce ob-
tained by *fraud* and false representations. In *Fermor's* case,
(3 *Coke*, 77.) it was resolved, that a fine, levied by fraud, was
not binding, and that such fraudulent estate was as no es-
tate in judgment of law ; and it was declared, that all acts
and deeds, judicial as well as extra-judicial, if mixed with
fraud, are void. This divorce was introduced by the de-
fendant himself, upon his trial, for the purpose of showing that
his former marriage was dissolved, so as to legalize his mar-
riage with the plaintiff's daughter, and thereby exclude her
from being a witness in the cause. Whenever he seeks to
avail himself of any benefit from a divorce, procured by his
own fraudulent conduct, although brought in collaterally, it
would seem to me competent to allege this fraud, otherwise
he would be permitted to derive a benefit from his own mis-
conduct ; a position altogether inadmissable. Under the
*Vermont* law, *wilful desertion*, for three years, is one of the
grounds upon which a divorce may be obtained. This, un-
doubtedly, implies *fault* and *misconduct ;* a desertion in viola-
tion of duty, and of the legal obligations imposed by the mar-
riage contract. It was under this part of the law that the
defendant obtained his divorce. In his petition, presented
to the court for that purpose, he charges his wife with *wil-
ful desertion for more than three years, and with a total ne-
glect of duty.* This allegation, which was the sole ground
of the divorce, was false, and known to be so to the defend-
ant. For she was, then, and had been, for more than five
years preceding, living in a state of separation from him,
under the authority and sanction of an act of the legislature
of the state of *Connecticut*, and by which it appears that both
husband and wife appeared, and were heard before the legis-
lature. The defendant must, therefore, have been fully
apprised of the authority and circumstances, under which
his wife lived separate and apart from him ; and could not
have believed it a wilful desertion, within the sense and

BORDEN
v.
FITCH.

meaning of the *Vermont* law. If the validity of this divorce were to be agitated in *Vermont*, it might well be objected, that it was obtained on false suggestions, and in fraud of their law; and the principle which governed the decision of this court, in *Jackson* v. *Jackson*, (1 *Johns. Rep.* 424.) would apply. It is there laid down, as a general principle, that whenever an act is done in *fraudem legis*, it cannot be the basis of a suit, in the courts of the country whose laws are attempted to be infringed. If we are bound to give to this divorce the same force and effect that it would have in *Vermont*, we must certainly admit all objections to be urged against it that could be alleged in that state. Suppose an action should be brought in *Vermont*, by Mrs. *Fitch*, for her alimony, under the *Connecticut* law, could the defendant avail himself of his divorce, to show a dissolution of the marriage contract, so as to discharge himself from the payment? She certainly might set up this fraud against the divorce. Or, suppose a suit brought in this court for the alimony, after the date of the divorce, and the divorce set up to avoid the payment; we should certainly be bound to give force and effect to the act of the legislature of *Connecticut*. That act was prior in point of time, and no want of jurisdiction could be set up, as both parties appeared before the legislature in *Connecticut*. The courts in *Vermont* cannot have the power of annulling the law of *Connecticut*. It would be rather a singular situation of the defendant, and his first wife, to consider the divorce a *mensa et thoro* in *Connecticut*, and the divorce *a vinculo matrimonii* in *Vermont*, both in force, and binding on the parties at the same time.

Upon the whole, therefore, I am fully persuaded, that we cannot consider the defendant as lawfully divorced from his former wife; and, of course, his marriage with the plaintiff's daughter was null and void. Without noticing the objections urged in arrest of judgment, and about which there is no difference of opinion on the bench, I am of opinion that the plaintiff is entitled to judgment, on the bill of exceptions.

Judgment for the plaintiff.