Curia, per

Earle, J.
It is essential to the validity of a judgment, that the Court should have jurisdiction of the person and of the subject matter. When such is the fact, the judgment is conclusive, between the same parties, and those in privity with them, upon all the matters in *58 controversy, which it purports to have decided. But I apprehend the want of jurisdiction may be set up against a judgment, whenever it is ^attempted to be enforced, as a new and substantive cause of action, or where a benefit is otherwise incidentally claimed under it. This is a fundamental principle, and pervades the jurisprudence of all civilized countries.
Nothing could be conceived more tyrannical and unjust, than to hold a man conclusively bound by a judgment recovered in a suit of which he had no notice, and in a court to whose jurisdiction he was not subject. Such a judgment cannot be rendered available for any purpose. This principle is well settled in the United States, in regard to judgments obtained in one State, when sought to be enforced by suit in the *courts of another. And it has been held by the most enlightened courts we have, that such judgments may always be impeached and invalidated, by showing that the defendant was not subject to the jurisdiction which rendered the judgment, and had no such notice of the suit as to be legally a party thereto; Borden vs. Fitch, (15 John., 121; Bessell vs. Briggs, 9 Mass. T. R., 462; Miller vs. Miller, 1 Bail. Rep., 242,) and the same point has been ruled in the King’s Bench, in regard to a judgment recovered in the island of Tobago. (9 East. 191.) If the want of jurisdiction appear on the face of the proceedings, there can be no doubt that the courts of the State in which the judgment was rendered, would them-selves regard it *as a nullity, when attempted to be enforced in a subsequent action. Such was the case of Lesterjette, Ordinary, vs. The Ex’rs. of Ford, (a) decided at Columbia, Fall Term, 1831; where *59 it was held that a surviving administrator and sole defendant, who was absent from the State, and had no property within it, could not be made a party to a suit in Equity by publication in the newspapers, so as to *60 enable the Court to pronounce a *binding decree. In a suit against the executors of the security, on the administration bond, such a decree was declared to be a nullity.
See Menlove vs. Oakes, 2 McMul. 162. An.
The only difficulty in this case arises from the recital in the decree of the ordinary, that Archer had been cited and made default ; and we are supposed to be concluded on the question now before us, by the case of *61 Lyles, Ordinary, vs. Robinson, (1 Bail. Rep. 25.) In that case the administrator himself being sued at law, pleaded that the decree of the ordinary had been rendered against without his having been duly cited or in any manner made a party. But it was held that such defence could not avail, and that the decree of the ordinary was conclusive.
Mr. Justice Nott says, “when a decree is pronounced, either in a Court of Ordinary, or in a Court of Equity, an action may be maintained on the bond, against the administrator or his sureties, to recover the amount so decreed to be due ; and whether the decree be correct or not, cannot be tried in this collateral way. It must be conclusive of what it purports to decide.” Now, how far the fact that the party was cited, was a point decided by the decree, may be well questioned. That was not the point in issue ; it was not the subject matter of the proceeding, which was instituted.only to ascertain the amount of the administrator’s indebtedness. But a material distinction between that case and this is, that there the administrator himself was alone sued ; and being permanently resident, and therefore admitting himself to have been subject to the jurisdiction, lie claimed to avoid the decree by denying the truth of the recital.
It is not pretended that the ordinary can, by publication in the gazzette, make one a party to a proceeding before him, who has removed from the State, and is a resident citizen of another. If he had recited that sort of notice in the decree, it would not have been regarded as conclusive, even against the administrator. Shall it be contended that by reciting merely that the administrator was duly cited, the ordinary can make his decree conclusive evidence against the sureties ? Upon the whole current of American cases, if this decree were attempted to be enforced against Archer in the State where he resides, he might avail himself of the want of jurisdiction, as a defence. It was held in Lesterjette vs. Ex’rs of Ford, that *the decree could not be enforced against the absent administrator in another State. When the case of Lyles vs. Robinson was decided, the general understanding of the profession was, that the decree of the ordinary was equally effectual against the securities, as the administrator.
In the case of the Ordinary vs. Condy, (2 Hill R., 313,) (a) that subject underwent the elaborate examination of the Court; and on mature consideration it was held, that the sureties do not stand in that relation of of privity to the administrator, which makes a decree against him, conclusive against them ; that such decree is only prima facie evidence of the amount due ; and that the sureties, when sued upon the bond, may prove that the decree was rendered for a larger amount than was due and owing; as, for instance, in that case, that the decree embraced an individual debt of the administrator for which the sureties were not liable. Being held as only prima facie evidence, such decree is put upon the footing of foreign judgment, of which, on the authorities cited, the validity may be impeached for want of jurisdiction. And upon the whole reasoning in the Ordinary vs. Condy, if the surety may controvert the *62 decree against the administrator, where he has been regularly and duly cited, on the very point which it is intended to ascertain and make certain, a fortiori, he should be allowed to prove that the administrator, in fact, was not a citizen of the State, but had removed so as to be no longer subject to the jurisdiction. How far such proof will render the decree a nullity, and wholly inoperative against the sureties, we will not dow undertake to decide.
See also 5 Rich. 85. 4 Rich. 120, 278. Act of 1839. 11 Stat. 40, provides for the case of an absent administrator. An.
Hutson and Bellinger, for the motion.
The motion is graned.
O’Neall, Evans, and Butler, JJ., concurred: Richardson and Gantt, JJ., dissented.

 C. B. Lesterjette, Ordinary, vs. The Ex’rs. of Elijah Ford.
Where there is only one defendant in a suit in Equity, who has removed from the State, and has no property there, he cannot he made a party, by publication in the gazette.
A decree pronounced against an absent administrator, thus attempted to be made a party, is a nullity, and will not sustain an action at Law against the sureties.
Before Earle, J., at Barnwell, Fall Term, 1831.
“ Nathan Grimes, deceased, made a will by which he bequeathed cortain slaves to his widow for life ; to be then sold, and the proceeds to be equally divided among his seven children.
Isaac Grimes and William Grimes took out letters of administration with the will annexed, and gave bond according to law. Elijah Ford, the defendant’s testator, was one of their securities.
John Grimes the elder was one of the seven children of Nathan Grimes, and was entitled under the will to a portion after the death of his mother. He died intestate, leaving a widow, Mary, who afterwards intermarried with one Pitman, and one son, John Grimes the younger, his only heir at law, for whose benefit this action was brought. There was no administration on the estate of John Grimes the elder.
The pleas were non est factum and performance. Replication assigning a breach that the administrator did not pay over to John Grimes the elder, his distributive share of the estate of Nathan Grimes the testator. Rejoinder and issue.
The plaintiffs, to sustain their action, produced the will of Nathan Grimes ; the return of sales by the administrators to the ordinary ; and finally, a bill and other proceedings in the Court of Equity, at the suit of the plaintiff against William Grimes, surviving administrator; Isaac Grimes having departed this life.
In the bill the plaintiffs style tliemselvss “your orator and oratrix, John Grimes, *59 the younger son of John Grimes the elder, deceased, and Mary Pitman, widow of said John Grimes the elder, who hath since intermarried,” &e.
It appeared by the proceedings, and was admitted, that William Grimes, the surviving administrator and defendant, was made a party to the suit in equity by publication in the newspaper, having removed without the limits of the State.
A report was made by the Commissioner, 3d February, 1824, in favor of complainants, for $729, and was confirmed the 4th February, 1824. A motion was made for a non-suit, and was sustained by the Court. The principal ground taken, and the only one relied on by the Court was, that William Grimes not being a citizen of South Carolina, not being found within its limits, and having no property there, could not be made a party to a suit in Equity where he was the sole defendant, by publication in the gazette, so as to give that Court jurisdiction over him; therefore, the decree pronounced against him, and produced in evidence to charge his securities, was a nullity. The plaintiffs, by introducing the decree, made the whole record evidence, so as to authorize the Court to look through the proceedings to see if there was want of jurisdiction, or any other substantial defect, to avoid the decree. The plaintiffs relied on the Act of 1784, (a) (1 Brev. Dig. 203.) On a strict construction of that Act, it may well be doubted whether it was intended to apply to such a case as this ; a case where there was only one defendant, and he absent, residing and being in another State, and having no property in this. I incline to think it was intended for those cases where several defendants are sued jointly, in relation to some property or right in which there is a joint interest. The property remaining in this State, and some one or more of the parties (defendants) in interest being here and served with process. “ If in any suit in the said Court, a defendant against whom,” &c., not the defendant; leading rather to the conclusion that it was meant for a case where one of several defendants could not be served. But suppose the decree would be valid against William Grimes, and could be enforced against him if he were to return ; it does not follow that it is binding on his securities, not parties to the suit, or that it can be enforced against them. Another clause of the same Act provides, in relation to the same subject, that such absent defendant may appear within two years and claim a re-hearing ; but that in case neither he nor his legal representative shall do so, “the decree shall stand absolutely confirmed against such person, his legal representative, and all claiming under him.” Now, the securities do not stand in either of these latter relations to William Grimes; and the last phrase, “all claiming under him,” seems to point exclusively to cases where some right or claim to property within the state is the subject of adjudication. It is worthy of remark, too, that the Act of 1808,(b) regulating the proceedings in the Court of Equity, and prescribing the mode of serving process, and bringing in parties, (1 Brev. Dig., 211,) contains no such provision; and it may well be questioned whether the Act under consideration is not repugnant to the latter Act, and repealed by the general repealing clause, page 212.
This question is briefly touched on, and perhaps decided by Chancellor De Saussure, in Wistanly vs. Savage, (2 McC. C. R., 435.) in which he says, “ It is very certain that non-residents cannot be made amenable to suits in this Court, unless they have property in the State;” and cites 1 Atk. 19; and he considers the Act of 1784 as intended to regulate proceedings in cases where non-residents could be made amenable, by holding property within the State, which would give jurisdiction, both at Law and in Equity: at Law by attachment, and in Equity by the publication of notice under that Act. The decree in this case would hardly be enforced against William Grimes by the Courts of the State where he resides, as th% judgment of a Court of compent jurisdiction ; as I apprehend neither the Courts of this State, nor any other, would enforce a judgment, (as such and therefore *60 conclusive,) obtained by process of attachment against a citizen in another State, where he did not reside. The plaintiffs moved to sustain the non-suit.
Curia, per O’Neall, J. The Act of 1784, (P. L. 388,) was intended to give the Court of Equity jurisdiction over defendants residing out of the State, in three classes of cases : 1st, where there might be other defendants residing in the State ; 2d, where the subject matter of litigation was within the State ; and 3d, where the defendant had property within the State, which could not otherwise be made liable to the complainant in Equity. It is, however, manifest in the two last of these cases, that the decree can have operation only on the matter in dispute or the property of the defendant, and is only a decree conclusive against him and those claiming under him, as to the matter in dispute, or the property made liable to the decree. Beyond this, I apprehend, the decree can have no effect. For as to the defendant himself, so long as he remains beyond the jurisdiction of this Court, it cannot be enforced by any action on it in another State. In the first case the decree may operate to conclude not only the defendants, but also in some cases his privies in law. If two administer on an estate, and one goes out of the State, and a bill is filed against the one in the State, and the other out of it, for an account, and a decree is obtained against them; in such a case, I should think the decree evidence to charge the securities to the administration bond. The securities undertake for the administration of both, and if one is within the jurisdiction, the other must be joined, and hence the Court having obtained jurisdiction by having one of the parties actually before them, and the other constructively, the decree is conclusive against the administrator in Court, and of necessity must be against the securities.
In a case decided in Charleston, at our session in February last, -it was held that the circumstance of the fund in dispute being within the jurisdiction of the Court, gave it jurisdiction, notwithstanding the defendants were without the State.
In the case of Miller vs. Miller, (a) decided Spring Term, 1829, at Columbia, it was held that no action could be maintained on a decree obtained by publication in North Carolina against defendants residing in this State. I hence conclude that where a decree is obtained against a sole defendant, residing out of the State, it must act upon the subject matter in dispute, or upon the defendant’s property in the State, which is decreed to be liable to the satisfaction of the complainant’s equitable demand. For any other purposes, it can have no effect. For, divested of these, the Court of Equity of this State lias no jurisdiction over a defendant residing out of it. The decree offered in evidence in this case, was clearly pronounced against a party not in Court, and over whom the Court had no jurisdiction, and is therefore void.
The supposed hardship of the case does not in reality exist. Where a sole administrator is absent from the State, that circumstance will give the Court of Equity jurisdiction to entertain a bill for an account against him and his securities. See Cole vs. Cole, decided at Columbia. The parties here have therefore no difficulty in obtaining their rights, if they will pursue the proper course.
The motion to set aside the non-suit is refused.
Johnson, J., concurred: Harper, J., absent.

 7 Stat. 210, § 12, 13. An.

 7 Stat. 306.

 1 Bail. 242. An.

 See Norton vs. Wallace, 1 Rich. 507, 2 Rich. 461. Davant vs. Webb, 2 Rich. 385. Dud. 27. Post 101, 250.