CUTTS (UNITED STATES v.). See Case No. 14,912.

CUYAHOGA CO. (PALMER v.). See Case No. 10,688.

---

## Case No. 3,523.

### CUYLER v. FERRILL.

[1 Abb. (U. S.) 169; 1 Am. Law T. Rep. U. S. Cts. 97; 8 Int. Rev. Rec. 194; 8 Am. Law Reg. (N. S.) 100; 1 Chi. Leg. News, 153; 3 Am. Law Rev. 375; 25 Leg. Int. 412; 1 Leg. Gaz. 148.][1]

Circuit Court, S. D. Georgia. Oct. Term, 1867.

PAYMENT IN CONFEDERATE NOTES — JURISDICTION — BONA FIDE PURCHASERS.

1. The definition of a vested remainder given in Doe v. Considine, 6 Wall. [73 U. S.] 458,— viz.: "a vested remainder is where a present interest passes to a certain and definite person, but to be enjoyed in future,"— approved and applied.

2. A payment of purchase money made in "Confederate notes," although made while the Civil War of 1861–65 was still pending, and in one of the so-called Confederate States, where such notes were then the usual currency, and although the notes were accepted as money, can not constitute the party making the payment a bona fide purchaser for value, so as to entitle him to equitable protection or relief in the circuit court.

[Explained in Bailey v. Milner, Case No. 740.]

3. Where a purchaser has notice of the facts upon which an adverse claim depends, he is deemed to have notice of the consequences of those facts.

[Cited in Van Epps v. Walsh, Case No. 16,-850.]

4. The courts of the United States will take judicial notice of the existence of the Civil War of 1861–65; and of the facts of public history connected with its origin and progress.

5. During the Civil War of 1861–65, some of the devisees of lands lying in Georgia, commenced proceedings for a partition of the lands, in one of the courts of Georgia. A partition was ordered and a sale made. At the time when the proceedings were pending one of the devisees was in the discharge of his duties as a surgeon in the United States army; and was prevented from communication with the state of Georgia, by the war. *Held*, that the proceedings of the Georgia court were void, as against such devisee, for want of jurisdiction.

[Cited in Kanawha Coal Co. v. Kanawha & O. Coal Co., Case No. 7,606; French v. Tumlin, Id. 5,104.]

6. The rule asserted by some authorities, that a bill in equity for partition should be dismissed where the title is denied, or an adverse possession asserted, and the parties left to establish their rights at law,—questioned.

[Cited in Weston v. Stoddard, 137 N. Y. 126, 33 N. E. 62.]

Hearing in equity, upon pleadings and proofs.

Fitch & Pope, for complainant.
Dougherty & Lloyd, for defendants.

ERSKINE, District Judge. John M. Cuyler, a citizen of the state of Pennsylvania, filed his bill in chancery in this court, for partition and relief, against D. M. Hood, and Frances, his wife; Joel Branham, and Georgia C., his wife; Estelle Cuyler, a minor, all citizens of Georgia, and residents of the northern district; and John C. Ferrill, of the city of Savannah, and a citizen of the state of Georgia. The bill was demurred to; because it was not alleged that any one of the defendants resides in the southern district, and because the forty-first rule of practice was not complied with. The demurrer was argued and overruled.

The cause of complaint finds its origin in the following provision in the will of Jeremiah Cuyler, deceased, made in 1837: "I give and bequeath my two lots and buildings in Savannah, fronting on Broughton and Bull-streets, to my four daughters" (naming them) "for and during their natural lives, and thereafter I give said two lots to my sons, John M. Cuyler and Teleman Cuyler, their heirs and assigns."

Complainant alleges that the life estate ceased in March, 1863, by the death of the last surviving daughter, and that the property, by the terms of the will, vested, in fee, in John M. Cuyler, and in the heirs of his brother Teleman, in undivided halves; Teleman having died, intestate, anterior to the termination of the life estate. He left a widow, Frances, who intermarried with defendant Hood, and left also three children— Thomas, who resides in Alabama; Georgia C., who had intermarried with defendant Branham, and Estelle, a minor.

Complainant also alleges that he has been informed that sometime during the late Civil War, and when all communication was interrupted, and when he was in the discharge of his duties as surgeon in the army of the United States, some of said parties applied

---

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission. 3 Am. Law Rev. 375, contains only a partial report.]

for a partition of said property, and under proceedings of which he knew nothing, to which he was not a party, and of which, at the time of filing the bill, he had no definite information, the said property was sold and purchased by John C. Ferrill, aforesaid, who, as he has been informed, paid for the same in notes issued by the late Confederate government. He charges that if such proceedings were had, they were not binding on him; and if intended to affect his rights, they were a fraud upon the same, and unlawful. He prays for a commission to divide and allot the property, so that he may hold a moiety thereof in severalty, and for an account of the rents, income, and profits from the death of the last surviving daughter, on the —— day of March, 1863.

Branham and wife, and Estelle Cuyler, by Hood, as her prochein ami, in answering the bill, admit, in general terms, the allegations therein. They further state that, soon after the vesting of the fee in complainant and the heirs of Teleman, Hood and his wife released to the remaining heirs all their interest in the property, "after which said property was held by such heirs and the complainant." That Brenham, as trustee under a marriage settlement with his wife Georgia C., "applied to the superior court of Chatham county, for partition and sale of said property;" a sale being necessary, because of the impracticability of dividing it by metes and bounds. That on May 16, 1863, the Hon. W. B. Fleming, judge, &c., granted the prayer of the petitioners, appointed commissioners to conduct the sale; and the property, after being advertised in two newspapers in the city of Savannah for thirty days, was sold under the direction of the commissioners, at public outcry, on the first Tuesday in July, 1863, to John C. Ferrill, for thirty-six thousand dollars; to whom, on August 14 of the same year, they made a deed of conveyance of the entire property. They admit that they severally received their distributive shares of the proceeds of the sale in treasury notes of the Confederate States, and believe that the whole of the purchase money was paid by Ferrill to the commissioners in the same kind of currency; and at that time such was the currency of that part of the country. They add that they acted in perfect good faith, and are content so far as their interest is concerned, to stand by such proceedings, and abide by the results.

On June 1, 1864, the commissioners made a return to the court, of their acts and doings in the premises; which may be stated thus: twelve hundred and forty-three dollars and thirty cents for expenses; five thousand eight hundred and seven dollars and eighty-three cents paid to Branham as trustee; the same sum to John R. Freeman, guardian of Thomas H. Cuyler; and the like sum to Ross, guardian of Estelle Cuyler; leaving seventeen thousand three hundred and thirty-three dollars and one cent,

"which," they add, "under the will of the said Jeremiah Cuyler, is devised to Dr. John M. Cuyler, a surgeon in the army of the United States. Of this amount these commissioners, under the exigencies of the currency act of the Confederate States, have invested seventeen thousand dollars in five per cent. certificates, and have on hand thirty-three dollars and one cent, currency of the Confederate States, issued prior to February 17, 1864." This return is included in the record of the proceedings for partition, all of which is made a part of the answer of these defendants.

John C. Ferrill in his answer admits the relationship of the complainant to the testator, but avers that he knows nothing of the will, the devises therein, or the probate thereof, or of the enjoyment of the property by the daughters of the testator, or of the vesting of the same in complainant and the heirs of Teleman; or of the residence of Thomas M. Cuyler; and prays strict proof. He substantially, but briefly, states the proceedings for partition; admits the sale of the property and its purchase by himself in 1863, and payment of the purchase money (thirty-six thousand dollars) in a check on the Bank of Commerce, and the receipt of the deed of conveyance from the commissioners. He avers that he believes that complainant was, at the time of the sale, a surgeon in the United States army; but knows not whether he was ignorant of the proceedings, and requires strict proof. He utterly denies any fraud on the rights of complainant in the sale and purchase of the lots aforesaid, "and insists that as a fair and bona fide purchaser for a valuable consideration he hath a full title to said lots of land in fee simple, and that partition cannot be decreed by this court." To these several answers complainant filed his replications.

Before inquiring into the merits of this cause, it may be well to advert to the deed of conveyance of August 14, 1863. The commissioners briefly set forth the proceedings for partition. Then comes this recital: "And whereas the said John M. Cuyler, being resident of the United States of America, the country of an alien enemy, has failed to execute a title to the said John C. Ferrill, the purchaser as aforesaid, and it hath become by law the duty of the aforesaid commissioners, or any two of them, to make and execute to the purchaser at such sale a deed of conveyance of said lots of land," &c. This is followed by a deed of bargain and sale to John C. Ferrill in fee, executed by the three commissioners. George W. Wylly, one of the commissioners, testifies that Ferrill paid for the property in "Confederate notes;" does not know whether he ever got possession of the property further than the delivery of the deed to him; and that it is generally known as Ferrill's property. As already seen by the condensed view presented of the record in this cause, the premises sought to be par-

titioned were devised by Jeremiah Cuyler to his four daughters for life, remainder to his sons, John M. and Teleman, in 'fee. This devise, on the death of the testator, gave the sons a present fixed interest in the property as tenants in common; and on the falling in of the last of the precedent life estates, in March, 1863, the seizin and implied actual possession and immediate enjoyment of the property was cast upon John M. and the heirs of Teleman, in undivided moieties.

Said Mr. Justice Swayne, in pronouncing the decision of the supreme court of the United States in Doe v. Considine, 6 Wall. [73 U. S.] 458: "A vested remainder is where a present interest passes to a 'certain and definite person, but to be enjoyed in future." Guided by this comprehensive definition, it is plain that the devise in the will of Jeremiah Cuyler is a vested and not a contingent remainder; and that the undivided half of the devised property is still in the complainant, unless he has disposed of it by alienation, or has been dispossessed of his title to and in it by the decree or judgment of a court having jurisdiction of the subject-matter and the rights of complainant.

The proceedings relied upon by the contesting defendant, Ferrill, in bar of the present suit for partition, were had, as it seems, under the Code of Georgia (sections 3896 to 3907, inclusive). These sections provide, among other things here unnecessary to mention, that if the party called upon to answer the application for partition be absent from the state, or has not been notified, he must, within twelve months after the rendition of the judgment, move the court to set it aside, or he will be concluded. "But in no event shall subsequent proceedings affect the title of a bona fide purchaser under a sale ordered by the court." Code, § 3907.

The property, as already noted, was sold in the summer of 1863, and the bill was filed in this court in the winter of 1867, nearly four years thereafter. But from the view which I entertain of this suit, the statute of limitations invoked is not a point for decision. Among other defenses, Ferrill assumed the position that if there was any irregularity in the proceedings of 1863, complainant must address himself to the superior court of Chatham county, that court alone having jurisdiction of the matter under the statutes of Georgia. And that view must be deemed correct unless there be circumstances—circumstances peculiar to the alleged proceedings for the partition—which contravene some governing principle or policy of the common or positive law.

Another position taken by him was that he is a fair and bona fide purchaser for value of the entire property, at a judicial sale, and, therefore, that no partition can be made by this court. If this argument is sound, then the complainant must go elsewhere to seek redress; for this court has no jurisdiction except what is bestowed by the national con-

stitution, and the laws of congress enacted in pursuance thereof. This defense appears to be founded upon the concluding sentence of section 3907 of the Code, but the defense is not, in my judgment, proved by the evidence. To entitle Ferrill to the benefit of it (supposing the proceedings and sale to have been legal), the purchase money—the thirty-six thousand dollars—must have been paid in money; whereas the proof is that it was paid in "Confederate notes." Boone v. Chiles, 10 Pet. [35 U. S.] 177.

Here it may be observed that it was fully discussed at the hearing whether the defense of bona fide purchaser can avail against a legal title; but the question seems not to be material to the determination of this cause.

If Ferrill is to be treated as a purchaser, it must be in a very limited sense of the term; he cannot be recognized as a purchaser who has paid, but as one still indebted; as, for example, a defendant in fieri facias would be, after payment to the marshal in a worthless or depreciated currency. Griffin v. Thompson, 2 How. [43 U. S.] 244; Buckhannon v. Tinnin, Id. 258. See, also [Gantly v. Ewing] 3 How. [44 U. S.] 707. Therefore, if the court could abstain from making partition, it would do so on terms, and these terms will necessarily be that Ferrill, as purchaser, pay to complainant his share, being one-half of the purchase money, in legal tender notes, with interest. And even if the court should ultimately so decree, it would not go so far as to accept such performance in lieu of partition, until after a return of the commissioners of this court, and not then, unless by mutual consent of the parties; or, as the last resort, in case equity cannot otherwise be done.

Notwithstanding the contentment of those defendants who received and accepted payment of their respective shares in Confederate currency or notes from their co-defendant Ferrill, under the authority and direction of their freely chosen agent, still my mind fails to comprehend the process of reasoning by which it can be inferred, from such receipt and acceptance, that the rights of the complainant in this bill are in any wise affected, unless he was a party to the transaction, or the tribunal which rendered the judgment had judicial cognizance of the cause.

This court, in Williamson v. Richardson [Case No. 17,754], April term, 1867, and the United States district court for the northern district of Georgia, in Dean v. Harvey [Id. 3,708], Administrator of Youal, in chancery, July, 1867, and the same court in Bailey v. Milner [Id. 740], ruled, that where parties, inhabitants of this state, had, during the Rebellion, sold or otherwise disposed of their property for Confederate notes, and accepted them in payment or exchange for it—where such transaction was fully executed, and free from fraud, covin, misrepresentation, and undue influence—the United States courts for

the state of Georgia would not, unless otherwise instructed by the supreme court of the nation, lend their aid to disturb or to set aside those acts, but would suffer them to remain entombed, and would leave also the parties to repose where they had voluntarily placed themselves. Toler v. Armstrong [Id. 14,078]; Planché v. Fletcher, 1 Doug. 251; Boucher v. Lawson, Cas. t. Hardw. (Lond. Ed.) 85, 89, 184. The owner of property may dispose of it for what he pleases, or even give it away. But this court can not recognize Confederate notes, or as they are more commonly called, "Confederate treasury notes," as money or other thing of value. And in Bailey v. Milner, supra, it was said by the court that these notes were issued by a pretended government, organized in the name of certain states by subjects and citizens of the United States, and who, at the very time, were in rebellion against their rightful government, and whose object and design it was to dismember and destroy it. See, also, Prize Cases, 2 Black [67 U. S.] 635; Shortridge v. Macon [Case No. 12,812].

Ferrill has made the record of proceedings of 1863, and also the deed of conveyance, a part of his answer; and having adopted this mode of defense, he is bound by it, for he cannot contradict that which he has pleaded as a record, nor gainsay the conveyance or the recitals therein; and each shows that he had notice of the claim of complainant to a moiety of the property. Bowm n v. Taylor, Scott, 210; Van Rensselaer v. Kearney, 11 How. [52 U. S.] 297; Brush v. Ware, 15 Pet. [40 U. S.] 93. Where a party has knowledge of the facts, he has notice of the legal consequence resulting from those facts.

In the argument in behalf of Ferrill it was said by one of his counsel, Mr. Dougherty,—and I quote from his brief,—that "the superior court of Chatham county had jurisdiction of the subject matter, and of the parties in interest, and its judgment, although (even if) erroneous, cannot be attacked collaterally." Citing and commenting on Griffith v. Frazier, 8 Cranch [12 U. S.] 9; 1 Pick. 439; 2 Burrows, 1009; 2 H. Bl. 415; 1 Kelly, 487; 23 Ga. 186.

If the tribunal which entertained the proceedings for partition really possessed the powers ascribed to it by counsel, then the authorities quoted are apposite, and the judgment cannot be assailed collaterally. But if it had not such jurisdiction, then the judgment, so far, at least, as the rights of the complainant are involved (for I am not cal'ed on to notice any jurisdictional question which might, under other circumstances, affect those who applied for partition in 1863), is null and void. And here the inquiry necessarily arises. Had this court jurisdiction of the subject matter of the judgment?

The national legal tribunals take judicial notice of the general enactments of congress, and of the duly promulgated proclamations of the president. The late Civil War being

matter of public history,—a fact impressed upon the whole country,—is likewise judicially known to the courts; and from this general historical fact they will also take judicial notice of particular acts which led to it, or happened during its continuance, whenever it becomes essential to the ends of justice to do so. On April 19, 1861, proclamation of blockade was made by the president. This of itself was conclusive evidence that a state of war existed. Prize Cases, 2 Black [67 U. S.] 635. Congress, on July 13, in the same year, passed a law authorizing the president to interdict all trade and intercourse between the citizens of the states in rebellion and the rest of the United States. On August 16 following, he proclaimed the inhabitants of the revolted states, including Georgia, in insurrection; excepting, however, certain named localities. And on April 2, 1863, he proclaimed them in insurrection, revoking the previous exceptions, but again making others. No part of Georgia fell within any of the exceptions. Congress, by a joint resolution, on February 8, 1865, declared that the inhabitants and local authorities of Georgia and ten other states "rebelled against the government of the United States, and were in such condition on November 8, 1864." 12 Stat. 1262, 257; 13 Stat. 731, 567.

In Bailey v. Milner, supra, the court said: "During the latter part of the year 1860 and the early part of 1861, South Carolina, Georgia, Louisiana, Virginia, and other states, by similar modes called on the people to send delegates to meet in convention. Accordingly the conventions assembled, and each passed an 'ordinance of secession,' as it is generally termed, by which ceremony these conventions severally adventured to withdraw the states from the Federal Union, and to release the people from their subjection to the laws of the land and their allegiance to the nation. The constitutional state governments were overthrown, and superseded by spurious and revolutionary governments. The setting up of a pretended central or general government, styled 'The Confederate States of America,' followed, and soon thereafter open rebellion and war of portentous magnitude burst upon the nation." Prize Cases; Shortridge v. Macon, supra.

"In the seceded states (so-called), the sovereign authority being, for the time, displaced, consequently there ceased to be, within any of them, a government under the constitution of the United States." Vide 1 Bish. Cr. Law (3d Ed.) § 129, and Mauran v. Insurance Co., 6 Wall. [73 U. S.] 1.

In 1863 and 1864, the complainant was in the discharge of his duties as a surgeon in the national army; and whether he had knowledge of the pendency of the alleged proceedings for partition is a matter quite immaterial. He, however, in his bill, avers that he knew nothing of them; but admits that he had some indefinite information that the property was sold, and was purchased by

John C. Ferrill, and was paid for in Confederate notes. But suppose notice—actual or constructive—came to him; still he could not be charged with laches, for, had he responded, it would have been ipso facto a breach of his allegiance to the United States. Hanger v. Abbott, 6 Wall. [73 U. S.] 532. And in that case Mr. Justice Clifford, in giving the opinion of the court, said: "War, when duly declared, or recognized as such by the war-making power, imports a prohibition to the subjects or citizens, of all commercial intercourse and correspondence with citizens or persons domiciled in the enemy's country."

In a subsequent part of the same opinion, that eminent judge—while remarking on the temporary cessation of common law and statutory limitations during war—used the following language: "But the exception set up in this case stands upon much more solid reasons, as the right to sue was suspended by the acts of the government, for which all the citizens are responsible. Unless the rule be so, then the citizens of a state may pay their debts by entering into an insurrection or rebellion against the government of the Union, if they are able to close the courts and to successfully resist the laws, until the bar of the statute of limitations becomes complete, which cannot for a moment be admitted."

The last quotation forcibly illustrates the maxim, that no one ought to be allowed to take advantage of his own wrong; a maxim applicable to the case now before this court; not so much, however, in a positive as in a circumstantial sense; yet falling within the principle that no one shall entitle himself to enforce a defense by reason of acts adopted or acquiesced in by him, after full knowledge of their nature and legal ulterior consequences.

If Mr. Ferrill were a bona fide purchaser, who purchased and paid his money for the property, confiding in the judgment of a tribunal of competent jurisdiction, then this court would decline to take cognizance of this suit—notwithstanding irregularities in the original proceedings—if the tribunal which assumed to entertain them had jurisdiction of the subject matter and of the rights of the complainant in this bill.

But my conclusion is, that the proceedings for partition, by the pretended superior court of Chatham county, in 1863 and 1864, so far as the rights of the complainant are concerned, were utterly void. And the court decrees accordingly. In this cause the complainant is endeavoring to establish his legal title to a moiety of the property, and in doing so he has not in his bill charged the defendants with any fraudulent intent upon his rights.

The main question being adjudged adversely to John C. Ferrill, still it seems to be necessary to notice another matter which was pressed with great earnestness. It was said on the part of Ferrill that adverse possession is a bar to a proceeding for partition, both in equity and at law. "If," said the counsel, "the bill states an adverse possession, it should be dismissed without prejudice." Citing 2 Barb. Ch. 398; 3 Barb. Ch. 608; 4 Barb. Ch. 493; 5 Barb. Ch. 51; 9 Barb. Ch. 516; Hoff. 560; 1 Johns. Ch. 111; 9 Cow. 516, 573; and Rich. Eq. 84. These authorities uphold the doctrine contended for.

In addition to those authorities, counsel also relied on the case of Bishop of Ely v. Kenrick, Bunb. 322. There the bill for partition was dismissed, because the title was denied. Without questioning the law of that decision, it must be deemed somewhat novel; for by it every defendant in a suit for partition, who chooses to deny title, holds the complainant at his mercy.

Courts, as eminent for their decisions as those referred to in argument, have of late progressed beyond this ancient technical rule of chancery practice. In Howey v. Goings, 13 Ill. 95, Mr. Justice Trumbull, in delivering the opinion of the supreme court of the state of Illinois, said: "There can be no doubt, however, that a bill in chancery lies for partition, notwithstanding an adverse possession, unless it has been continued sufficiently long to bar a recovery under the statute of limitations, which is not pretended in this case." He cites Overton v. Woolfolk, 6 Dana, 374. I carefully looked into the bill in the present case, and found no allegation of adverse possession, nor is it set up in the answer or proved by the evidence.

It is said that in a bill for partition the averment of possession is not sufficient; there must be an averment of title. 2 Atk. 882; Amb. 236. And the reason of this rule is plain; for it is upon the title that courts of equity act in decreeing partition; and to render the title of each party complete, they compel the parties, when the several portions are allotted, to execute conveyances according to the partition; and the execution of these titles draws to them the possession. If there is no relaxation of the rule which obtained in the English chancery and in the chancery courts of several of the older states of the Union, then where a bill is filed for partition, and an adverse possession is interposed, or where the legal title is disputed, or suspicious circumstances darken it, it is usual for the court to make a decretal order arresting the proceedings until the parties disputant settle the title in a court of law. 1 Ves. & B. 552; 3 Johns. Ch. 303; 4 Johns. Ch. 276. But in some of the states, owing in part, at least, to the peculiar manner in which the tribunals of justice are there constituted, by the blending of the offices of chancellor and common law judge in the same person, the rigid chancery doctrine has been greatly modified. In Georgia, for example, these offices, distinguishable in some degree in a judicial sense, are exercised by the same person. And such, indeed, is likewise the case in this court. See act of September 24, 1789, § 11 (1 Stat. 78). The su-

preme court of the United States, in Parker v. Kane, 22 How. [63 U. S.] 1, speaking of chancery practice in suits for partition, said: "In Great Britain, a chancellor might have considered this a case in which to take the opinion of a court of law, or to stay proceedings in the partition and cross suits until an action at law had been tried to determine the legal title. Rochester v. Lee, 1 MacN. & G. 467; Clapp v. Bromagham, 9 Cow. 530. But such a proceeding could not be expected in a state where the powers of courts of law and equity are exercised by the same persons." But in my opinion this case has not thus far presented any question of fact upon which an issue could be framed for the determination of a jury. The evidence in the cause is unassailed, uncontradicted, and in no way conflicting. John C. Ferrill, the contesting defendant, stands upon the record of the proceedings of 1863 and 1864; and if it be tried it must be by inspection, and this is the province of the court. Indeed, the most that can be said against complainant's title is that it is not free from doubt; but all the doubt there is concerning it is raised by the sale under a pretended judgment of partition; and the validity of that sale depends upon the validity of the judgment.

It is a principle governing all courts of judicature that a judgment of a tribunal which has no jurisdiction of the parties and subject matter is absolutely void, and must be so treated when the record is offered in evidence or used for any other purpose. Buchanan v. Rucker, 9 East, 192; Borden v. Fitch, 15 Johns. 121; Newdigate v. Davy, 1 Ld. Raym. 742. In the case of Newdigate v. Davy, Sir Richard Newdigate gave a donation to Davy, and afterwards removed him and put in S. Davy, in the time of James II., cited Newdigate before the high commissioners, who restored Davy, and made Newdigate pay to him all the arrears he had received. After the revolution of 1688, Newdigate brought indebitatus assumpsit against Davy for money as paid to his use. The court gave judgment for the plaintiff, because it was money paid in pursuance of a void authority.

There must be a decree to the following effect: Decree: This cause came on to be heard at this term of the court, and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged, and decreed as follows: First. That partition be made of the premises in the bill of complaint described, so that one moiety thereof shall belong to the complainant in severalty, and be to him delivered for his several possession and enjoyment forever. Second. That William R. Boggs, A. R. Wilson, and A. S. Hartridge, Esquires, be appointed commissioners to make such partition in terms of the law, and report their action to the next term of this court; and if the said commissioners should find it impracticable to divide the said premises into two equal moieties, so that one of

the same may be assigned to the complainant, then they shall report that fact to the court, and abstain from further action until further order. Third. That Edward J. Harden, Esquire, a counselor of this court, is hereby appointed a master in chancery pro hac vice, in this case to take account between the complainant, John M. Cuyler, and the defendant John C. Ferrill, of all rents and profits (if any) that may be due from the latter to the former, whether by reason of the actual receipt and collection of rents and profits issuing out of said premises, or by reason of the occupation of said premises by said defendant himself; charging said defendant with one moiety of the whole, and giving him credit for one moiety of the actual and necessary expenses incurred and paid by him touching said premises.