*Foot, J.
 

 This was an action of ejectment to .recover land lying in Cayuga county. Aaron B. Sheldon, deceased, of the town of Brutus, in that county, owned the land at his death, which occurred in February 1826. He died intestate, and the appellant, being-one of his children and heirs-at-law, claims by descent. The respondent acquired his title, in January 1827, by purchase at a sale of the real estate of the intestate, made in pursuance of an order of the surrogate, entered in the month of December previous. There are numerous objections to the proceedings before the surrogate, *but in this collateral action, we can only in-
 
 J
 
 quire whether he had jurisdiction.
 

 I. Had he jurisdiction to grant letters of administration on the estate of the intestate ? By looking at the statute under which the letters of administration in question were granted (1 R. L. of 1813, 445, § 3), it will be seen, that only two facts were necessary to give the
 
 *477
 
 surrogate jurisdiction: 1st. The death of a person : 2d. That at his death he was an inhabitant of Cayuga county. Both of these facts existed, and are found by the special verdict in this case, and both appear on the record of the proceedings before the surrogate, and that is sufficient to confer jurisdiction, as was correctly said by Beonson, J., in delivering the opinion of the supreme court in
 
 Bloom
 
 v.
 
 Burdick
 
 (1 Hill 134). A surrogate holds a court of limited jurisdiction, and the same rule is applicable to a surrogate’s court as to other inferior courts. That rule is, that there should always appear sufficient, on the face of the proceedings of an inferior court, to show that it had jurisdiction of the cause or subject of which it takes cognisance. The facts on which its jurisdiction depends must be averred and appear on the record; this rule is well settled, and has been often recognised and acted upon by our courts. Among other cases, see the
 
 following
 
 —Dakin v.
 
 Hudson
 
 (6 Cow. 221),
 
 Cleaveland
 
 v.
 
 Rogers
 
 (6 Wend. 438),
 
 Powers
 
 v.
 
 People
 
 (4 Johns. 292),
 
 People
 
 v.
 
 Koeber
 
 (7 Hill 39) and cases there cited.
 

 The statute conferring jurisdiction on the surrogate, does not require preliminary proof to be made to him of the facts on which his jurisdiction depends, as does the statute giving jurisdiction to a commissioner in the case of an absconding, concealed and non-resident debtor (2 R. S. 3), and the statute giving authority to a justice of the peace to issue an attachment in the case of an absconding or concealed debtor (Id. 230). The difference between those cases, and inferior courts, in respect to the point under consideration, is plain and marked. See
 
 Miller
 
 v.
 
 Brinkerhoff
 
 (4 Denio 118).
 

 *The act of 1813, giving the surrogate jurisdiction and regulating the proceedings before him, contains various directions; among them are these: he shall not grant administration, until he has satisfactory proof “ that the person of whose estate adminis-
 
 *478
 
 tratioH is claimed, is dead, and died intestate” (1 R. L. of 1813, 445, § 5), in case of an application for administration by a person not entitled, as next of kin, be shall issue a citation to the next of kin (Id. § 6); and on granting letters of administration, he shall take bonds with two or more competent sureties (Id. p. 447, § 10). These are, manifestly, more directions not affecting the jurisdiction of the surrogate, and for a departure from which his proceedings would be set aside on review.
 
 (Bloom
 
 v.
 
 Burdict,
 
 1 Hill 134.)
 

 The counsel for the appellant pressed upon the attention of the court, the defectiveness of the proof before the surrogate, of the death and intestacy of the decedent. For the reasons already given, this court cannot, in my opinion, examine that subject, in this action, and I will 'add the further reason, that
 
 intestacy
 
 has not only no connection with the question of jurisdiction, but must always be a subject of investigation before the surrogate, and whenever a will is propounded and contested, one of litigation, and often-times of protracted and severe contest. Surely, the jurisdiction of the surrogate’s court cannot depend on the results of such a contest, which often does not terminate till closed by a decision of this court.
 

 II. The next question in the case is, whether the surrogate had jurisdiction of the subject of a sale of the intestate’s real estate, or, in other words, authority to order it sold for the payment of his debts. On this branch of the case, as well as the other, various objections are made to the proceedings before the surrogate, but this court can only notice those affecting his jurisdiction ; of these, there are three. 1. The presentation to the surrogate by the administrator of an account of the personal estate and debts of the decedent: *2. The publication of the order to show cause for four successive weeks: 3. The appointment of a guardian for the infants.
 

 
 *479
 
 It must be borne in mind, tbat tbe authority given to the surrogate to sell the real estate of a decedent is in derogation of a common-law right, and can be exercised only in the case specified in the statute, and that case is, when the personal estate of a decedent is insufficient to pay his debts. The evidence of that fact is declared by the statute to be the account which the administrator is required to present to the surrogate of the personal estate and debts of the decedent.
 

 1. Was such an account presented in this case? There was, accompanied by a petition of the administrator for a sale of the real estate. The criticism made on the heading of this account, because the word
 
 estate
 
 is used before the name of the decedent, is groundless; for the account, read in connection with the petition which accompanied it, and to which it was annexed, appears clearly to be the account which the statute required. The surrogate, therefore, had jurisdiction of the
 
 subject
 
 of the sale of the real estate in controversy. (See
 
 Jackson
 
 v.
 
 Robinson
 
 (4 Wend. 436);
 
 Jackson
 
 v.
 
 Irwin
 
 (10 Id. 441);
 
 Jackson
 
 v.
 
 Crawfords
 
 (12 Id. 533).
 

 2. Publication of order for persons interested to show cause. It is important to ascertain, in the first place, to what class of facts this one, of the publication of the order, belongs; the principle on which it affects the jurisdiction of the surrogate; and the rule by which the sufficiency of the proof of it is to be tested. The surrogate unquestionably acquired jurisdiction of the subject-matter, on the presentation of the petition and account; but before he could grant a valid order of sale, ho must also acquire jurisdiction of the persons whose rights were to be affected by it, and that is accomplished by the publication of the order. Such publication must, therefore, be made, before full jurisdiction is obtained, not because the statute *directs it, for the statutory provision is merely directory, but because it is a great and fundamental “ principle in the adminis
 
 *480
 
 tration of justice, that no man can be divested of his rights, until he has had the opportunity of being heard.”
 
 (Corwin
 
 v.
 
 Merritt,
 
 3 Barb. 345, and cases there cited.) Publication of this order, then, is a jurisdictional fact, of the evidence of which the surrogate must necessarily judge. He has judged and decided, that the order was published as required by the statute, and his judgment appears on the record of his proceedings.
 

 III. The last inquiry, then, is, can that judgment be overhauled in this collateral action, at the instance of the appellant ? The appellant became of age on the 27th of April 1827; the order of sale was in the month of December, and the sale took place in the month of March previous; and this suit was commenced early in the year 1847. The respondent paid the fair value of the property, and went into possession of it, under his purchase, on the 1st of April 1827, and has continued in it ever since. The injustice of now turning him out is most flagrant, and should not be done, unless some inflexible rule of law requires it. While inquiring, however, whether there is any such rule, care must be taken that the hardness of the present case does not lea< I the inquirer astray.
 

 A similar question arose and was decided, at the last term of this court, in the case of
 
 Dyckman
 
 v.
 
 City of New York (ante,
 
 p. 434). In that case, the jurisdictional fact appeared on the record, as in this case, and on the trial in the collateral action, proof was offered to show that the jurisdictional fact did not exist. The judge rejected the proof, and this court affirmed the rejection, on the ground, that the record of the summary proceedings before the vice-chancellor was conclusive. That case was different from this, in three particulars, two unimportant, and one important in the application of the principle of law. The two unimportant particulars are these: In
 
 Dyckman
 
 v.
 
 City of New York,
 
 the evidence offered to controvert the jurisdictional fact was rejected,
 
 *481
 
 and *in the present case, it was received. In that case, the city corporation was a party to the summary proceeding, and defendant in the collateral action; in this case, the respondent is defendant in the collateral action, and not a party to the summary proceedings ; hut he is a privy in estate and contract with the administrator, who was a party, and, consequently, equally entitled with him to the protection which the record of the summary proceedings affords.
 

 The important particular in which the present case differs from the one of
 
 Dyckman
 
 v.
 
 City of New York,
 
 is, that in the latter, Dyckman appeared in the summary proceeding, and litigated on the merits; while in the former, the appellant did not appear. The question then arises, does his omission to appear place him in a more favorable condition for litigating the jurisdictional fact; or, in other words, can a party to a judicial proceeding, by lying by, and omitting to appear, acquire a right to open the proceeding, at any time, and litigate, in a collateral action, a jurisdictional fact ? It will be perceived, at once, that if the right depends on appearance or nonappearance, the fact that the party claiming it has been served with personal or statutory notice, makes no difference. If there be any difference, it is in favor of him who has been served with personal notice, for such a notice is, in general, more difficult to prove, after a considerable lapse of time, than a notice by publication; and should a proceeding be opened, and an inquiry instituted, whether a party to it had been served with personal notice of it, his prospect of success would always be good, and the better, the longer the inquiry is delayed, and the later the day on which it is instituted.
 

 It cannot be, therefore, that the acknowledgment or denial of the right of a party to a summary or other judicial, proceeding, to disregard the record of it, and litigate collaterally a jurisdictional fact, depends on his appearance or non-appearance in such proceeding. It
 
 *482
 
 rests on a deeper and broader ground, a principle which ^6S ^ourL<^a^on social *order, and which encourages peace, and discourages litigation; and that principle is, that when a court, or judicial officer, in the exercise of rightful functions, adjudges upon a matter, that judgment is final between the parties, and other persons claiming under them, and is conclusive on the facts which it embraces.
 

 There are some qualifications of this principle, and the only one which it is necessary to notice, on the present occasion, is this: that if the court or officer who pronounces the judgment, has not jurisdiction of the subject and parties, his judgment is not conclusive. And the difficult and important point for decision is, whether the judgment of the surrogate is conclusive on the fact of the publication of the order for persons interested to appear. In my opinion, it is. When Thompson, C. J., said, in the case of
 
 Borden
 
 v.
 
 Fitch
 
 (15 Johns. 141), that “the want of jurisdiction is a matter that may always be set up against a judgmentand Spencee, 0. J., quoted his language with approbation, in
 
 Mills
 
 v.
 
 Martin
 
 (19 Johns. 33); and Sutherland, J., repeated it, in
 
 Latham
 
 v.
 
 Edgerton
 
 (9 Cow. 229); these distinguished judges doubtless intended only to say, that the want of jurisdiction might always be set up against a judgment, when it appeared on the record, or was presented in any other unexceptionable manner.
 

 In the case of
 
 Borden
 
 v.
 
 Fitch,
 
 before referred to; the notice to the party against whom the proceedings in Vermont for a divorce were taken, was by publication. The ground taken by the supreme court, in deciding against the validity of those proceedings, was, that the party to be notified was a resident of another state, and never within the jurisdiction of the court. The principle of that decision is opposed by no case, to my knowledge, and appears to be safe and wholesome in practice; it is simply this, that when a form or mode of notice to
 
 *483
 
 a party, of a judicial proceeding, is prescribed by statute, and tbe party
 
 resides within the territorial jurisdiction of ihe state and court,
 
 a notice, in the mode designated is ^sufficient to give the court jurisdiction.
 

 In the present case, the guardian of the appeJ-lant, and the appellant himself, resided in the e >unty of ■ Oayuga; the guardian was present in court, and appointed to his trust, in the progress of the proceedings, and before the order of sale was made. The record of the surrogate’s court shows, in addition to his judgment, that tlie order to show cause was published, as directed by the statute, and that evidence of its publication was laid before him. We, then, have a case where a party resided in the state, and within the jurisdiction of the surrogate’s court, where there is evidence, on the record of its proceedings, that the statutory notice was actually given, and the judgment of the surrogate that such notice was full and perfect, and in such a case, we are asked, in a collateral action, to disregard the surrogate’s judgment, and open and investigate the jurisdictional fact of publication of the notice. This we cannot do, the surrogate's judgment being, in my opinion, conclusive. (See
 
 Dyckman
 
 v.
 
 The City of New York,
 
 and cases there cited.)
 

 I have no doubt, that the decision of the surrogate was correct, in respect to the time and manner of publishing the order to show cause. It was in accordance with the language of the statute, and there does not appear to be any reason for a different construction. The decision of the supreme court in Massachusetts, in the case of
 
 Bachelor
 
 v.
 
 Bachelor
 
 (1 Mass. 255), is directly in point, aud appears to have been better considered, and to rest on sounder reason, than the adversary opinion of our own court, in an anonymous case, involving the same question. (1 Wend. 90.) The record of the surrogate’s court also shows that the guardian had full personal notice of the proceedings, certainly, more than a fortnight, and, as will appear when the next question is examined, six
 
 *484
 
 weeks before the order of sale was made. But I place my opinion on neither of these last two grounds, as doing so would recognise the right of the appellant to institute, in this action, an inquiry respecting the existence of the jurisdictional fact under consideration, and thereby endanger titles fairly acquired, and encourage litigation. I place it, as has already been said, solely on the conclusiveness of the judgment of the surrogate.
 

 The next and last subject of examination is the appointment of a guardian' for the appellant. One was duly appointed for him; but it is said, the appointment was not made, six weeks before the entry of the order of sale, and this is said, because of a slip in the caption of the order, by which the
 
 day
 
 of the month in which it was made is in blank. Without inquiring whether it was necessary to appoint the guardian six weeks before making the order of sale, and without availing myself of any presumption that the surrogate did his duty, seasonably and properly, and looking solely at the record, in connection with the accompanying facts and circumstances, for information as to the time when the appointment was made, I have no difficulty in arriving at the conclusion, that the order to show cause, and the appointment of the guardian, were made on the same day, viz., the 6th of September 1846.
 

 In respect to the inaccurate recital of the orders of sale in the deed, the discrepancy appeared, and was corrected on the face of the deed; the error is too slight for serious consideration. The judgment should be affirmed.
 

 See, to the same effect, Roderigas
 
 v.
 
 East River Savings Institution, 63 N. Y. 460. But the act of a clerk in the surrogate’s office, in issuing letters of administration, has not such effect; the surrogate cannot delegate the
 
 *492
 
 powor of deciding upon a jurisdictional fact: Roderigas
 
 v.
 
 East River Savings Institution, 76 N. Y. 316.