·Roderigas agt. East River Savings Institution.

# NEW YORK SUPERIOR COURT.

RODERIGAS agt. THE EAST RIVER SAVINGS INSTITUTION.
(Two suits.)

*Jurisdiction by surrogate to issue letters of administration — in cases of estates of living persons.*

Neither the legislature nor the courts have power to confer jurisdiction on surrogates over the estates of living persons.

The foundation of the theory of distribution of estates, whether under statutes of distribution or according to provisions of wills, rests upon the event of death.

A savings bank, therefore, which pays out deposits to a person appointed administratrix of the estates of two persons, depositors, when both depositors at the time are living, have no protection against the depositors, although it took two separate receipts from the administratrix at the time of payment.

*Special Term, June,* 1874.

On the 1st of October, 1857, James Devine and his wife, being residents of the city and county of New York, deposited two sums of money, of $485 each, with the defendant, which was,· and still is, duly incorporated under the laws of this state, for the purpose of receiving moneys on deposit and paying interest therefor. The deposit of one of these sums was placed to the credit of James Devine, and one to the credit of James Devine and his wife, Martha. Both these sums, with accrued interest, were paid on the 29th of May, 1869, by the defendant, to Isabella McNeil, as administratrix of the estate, &c., of James Devine and Martha, his wife, the said Isabella having been appointed such administratrix by the surrogate of the city and county of New York. The

defendant took from her, as such administratrix, two separate receipts at the time of payment.

Neither depositor was dead at the time the said Isabella was appointed administratrix, nor at the time the payments were made to her.

The plaintiff was the wife of James Devine at the time of his death. He died intestate, on the 31st May, 1870, and letters of administration were duly issued to the plaintiff, on the 31st May, 1872, after she had procured the said letters of administration issued to the said Isabella McNeil to be revoked by the said surrogate.

*S. Jones*, for plaintiff.

*J. W. C. Leveridge and S. P. Nash*, for defendants.

Spier, *J.* — The question in the case is, had · the surrogate jurisdiction to grant the letters of administration which protect the defendant in making the payments to Isabella McNeil? The only justification for doing so, as claimed, is that it paid upon the strength of the letters issued by the surrogate of the city and county of New York. It must be conceded if he had no jurisdiction it would be no protection.

The defendant claims, through its counsel, in order to sustain the surrogate's jurisdiction for its protection, chiefly upon the ground that the state appoints, by judicial authority,. certain persons who, upon the death of an individual, administer upon his personal property; and although the state does not profess to administer it unless the individual be in fact dead, there are many cases where the question of death, like other questions of fact, are difficult of ascertainment, and that in such cases it is within the legitimate province of the state, on presumptive proof of death, to authorize administration on his estate, establish tribunals to take such proof, providing safeguards sufficient to make the sanction of its judicial authority a protection to third parties. It claims that the state

of New York has done this, and the cases at bar are to be determined by its statutory law alone.

Section 26, article 2, title 2, chapter 6, volume 2, Revised Statutes (*Edm'ds ed.*), page 75, is relied on : " Before any letters of administration shall be granted on the estate of any person who shall have died intestate it shall be proved to the satisfaction of the surrogate, who shall examine the persons applying for such letters, on oath, touching the time, place and manner of the death, and whether or not the party dying left any will; and he may also, in like manner, examine any other person, and may compel such persons to attend as witnesses for that purpose."

Again; it is provided that "the letters testamentary and of administration, and letters appointing a collector, granted by any officer having jurisdiction, shall be conclusive evidence of the authority of the persons to whom the same may be granted, until the same shall be reversed on appeal or revoked, as in the chapter provided (2 *R. S.*, 80, § 56).

In the twenty-sixth section it is assumed, by the very letter of the statute, that the proceedings take place only when "any person shall have died intestate," the fact of such person dying intestate shall be proved to the satisfaction of the surrogate. The court is not authorized to act except when the fact exists that the person shall have died intestate. The court is set in motion by the admitted jurisdiction, that such person has died intestate, and the proceedings are carried forward only upon that assumption. So, in the fifty-sixth section, the proviso is, that certain letters, issued by an officer having jurisdiction, shall be conclusive, &c. This, the defendant's counsel says, means granted by the proper officer, and on proper proceedings taken before him, and if it means that the letters are a protection only in case the proof before the surrogate was conclusive, the section is useless. With great respect, I think the learned counsel assumes the premises for the sake of his deduction. Jurisdiction here is conceded, and, therefore, the surrogate is authorized to issue certain letters,

Roderigas agt. East River Savings Institution.

but it does not follow that he has authority to issue them under all circumstances, and much less where he has not the acquired jurisdiction. Nor in logical terms can the section be said to be useless; for the court, acting within the sphere of its original authority, the letters issued by an officer acting under such authority should be taken as conclusive, both as a useful and orderly proceeding on well settled principles.

The forty-seventh section (2 *R. S.*, 79) is claimed to cover the whole ground assumed by the defendants. It is in the words following : "All sales made in good faith, and all lawful acts done, either by administrators before notice of a will, or by executors or administrators who may be removed or superseded, or who may become incapable, shall remain valid, and shall not be impeached; or any will afterward appearing, or by any subsequent revocation or superseding of the authority of such executors or administrators."

This section, like all others on this subject, is founded upon the fact that the surrogate shall and must have jurisdiction over the subject-matter before he could deliberate on the case. The proper surrogate obtains control over the personal estate of deceased persons only upon their death. He acts upon the estate either through administrators, according to the statute of distributions, or through executors, according to the provisions of a will. Having acquired jurisdiction by the event of death, the question whether there was a will or not, as determining the mode of distribution, falls within his province, and his action either in granting letters of administration or probating a will, as the case may be, cannot be attacked collaterally. By the actual facts of death and inhabitancy the surrogate acquires jurisdiction over the whole subject, and his action in granting letters of administration cannot be attacked for want of jurisdiction. In case of a will being subsequently proven, relief could be obtained by application to the surrogate himself, for a revocation of the letters of administration, in which case, as the grant of letters of administration was voidable, only the acts done under it

would be valid. In *Prosser* agt. *Wagner* (1 *Com. B.* [*N. S.*], 289), both the death of the party, and the granting the letters by the proper officer, was conceded. See also *Sheldon* agt. *Wright* (5 *N. Y.*, 497), as to the necessary result of the principles there laid down.

The statute of 1870 (1 *Laws of* 1870, *p.* 826) is also referred to as sustaining defendant's position. He claims that it being remedied it may well retract. The answer to this is, that " all lawful orders and decrees in proceedings in the surrogate's court,   *   *   *   and the objection of want of jurisdiction, except by appeal in the manner prescribed by statute, &c.," relate only to the case where such original jurisdiction has been acquired, and is to be construed in harmony with other statutes on the subject (1 *Kent's Com.*, *p.* 524, 525 [10*th ed.*]). I hope to show, presently, it is not in the power of the legislature to confer jurisdiction on a surrogate over the estate of a living person.

In the case at bar, the parties not being dead, all the proceedings were totally void, and consequently the payment to an executor or administrator appointed where the supposed testator or intestate is alive, would not be a discharge of the debt.

I think it may well be conceded that, upon evidence being furnished, according to the rules and principles of evidence and law, establishing the fact of death and of intestacy, the surrogate would be bound to issue letters, but this is done at the peril of the applicant, in case death should not in fact have occurred. But, as already shown, a compliance with such duties never, by the statutes of this state, give him jurisdiction when the supposed intestate or testator was in actual being. The surrogate must always inquire and decide whether the person whose estate is to be committed to the care of others be dead or in life. Yet, if he decides that the person, on whose estate he acts, is dead, if the fact be otherwise, does not invest the person he may appoint with the character or powers of an administrator.

The case is not within his jurisdiction (*Griffiths* agt. *Frazier*, 8 *Cranch, p.* 9; *opinion of* MARSHALL, *C. J.*).

The defendant's counsel's position is, that admitting there are dicta in the books to the effect that administration granted during the lifetime of a person upon his estate, because the ecclesiastical courts have jurisdiction only on the estate of dead persons (*Allen* agt. *Dundas*, 3 *T. R.*, 125; *Griffiths* agt. *Frazier*, 8. *Cranch*, 24), yet they do not override the statute of New York, which provides for a judicial inquiry into the fact of death, and that there is no New York case which decides otherwise.

I think the assertion too broad and not well considered. The third and fifth sections of chapter 79 of the Laws of 1813 (*Laws of* 1813, *p.* 445) are analogous to those before cited. Section 5 of the act of 1813 is, in substance, the same as section 26 of Revised Statutes; in fact, the act of 1813 goes further than the Revised Statutes, for it requires in express terms that satisfactory proof shall be made of the death of the party as well that he died intestate, while the Revised Statutes does not require proof of the death of the party, except as going to establish the fact required to be proved, that is, that the party died intestate.

The court of appeals held, in *Sheldon* agt. *Wright* (5 *N. Y., p.* 497 *and pp.* 510–512), that the provision in section 5 of the act of 1813 was merely directory, and did not effect the surrogate's jurisdiction; but that his jurisdiction depended on the actual existence in fact — first, on the death of the person, and second, that at his death he was an inhabitant of the county in which the surrogate who issued the letters was empowered to act. It clearly appears, by reference to sections 3 and 5 of the act of 1813, that upon the existence of the above two facts, the same surrogate who would, in case there was no will, have power to grant letters of administration, would, if there was a will, have power to probate it and issue letters testamentary thereon. In *Sheldon* agt. *Wright*, the non-existence of a will is not put as one of

the facts on the actual existence of which the jurisdiction to issue letters of administration depends; and the actual existence of the will is not one of the facts on which the jurisdiction to admit a paper, purporting to be a will to probate, and to issue letters testamentary thereon depends. If either one of the above two matters does not actually exist as matters of fact, the surrogate is without jurisdiction, while if both do exist as matters of fact, the same surrogate has complete jurisdiction over the whole subject, either to grant letters of administration, or letters testamentary, as the case may require; and his action in granting one or the other could not be attacked for want of jurisdiction, but could be reversed or modified only by a court of review, or in pursuance of some statutory remedy  See discussion of the case of *Sheldon* agt. *Wright,* by the learned judge, in *Bolton* agt. *Jacks* (6 *Robertson, pp.* 221, 222). The above provisions of the Revised Statutes did not cover the case of a will, but the act of 1837 did, and the two together give to the surrogate precisely the same jurisdiction as the act of 1813, with but one substantial difference, viz. : The act of 1813 gives jurisdiction to grant letters of administration, admit wills to probate in certain cases when the decedent was not an inhabitant of this state. The additional clause in section 26 of Revised Statutes respecting the examination of a party on oath, and the subpœnaing and compelling the attendance of witnesses, are merely express enactments of power implied in the direction given by section 5 of the act of 1813, being necessary to a compliance with such direction (1 *Kent's Com.,* 525 [10*th ed.*] ). The case of *Sheldon* agt. *Wright* seems to me to be an exposition of the law of this state on this subject and controlling over the case at bar.

At common law, administration granted upon the estate of a person in  life was wholly void, even though granted by a court which had full power and jurisdiction over the granting of letters of administration (*Allen* agt. *Dundes,* 3 *T. R.,* 125 ; *Griffiths* agt. *Frazier,* 8 *Cranch, p.* 1 ; *Joachimsen* agt.

*Suffolk Savings Bank*, 3 *Allen*, 87). The above and cases herein cited are directly in point. The case in 3 *Allen*, rests in its decision upon the principles of the English law, and does not depend upon any particular statute. The cases of *Carter* agt. *Buchanan* (2 *Kelly*, 337); *Noel* agt. *Wells* (1 *Levins. S. R.*, 235); and *Prosser* agt. *Wagner* (1 *Com. B.* [*N. S.*], 287) referred to by defendant's counsel, do not apply to the case at bar. The party whose will was offered for probate being conceded to be dead, the question whether the paper propounded was his will or not was the question which the court was authorized to determine.

It is difficult to break the force of the case of *Joachimsen* agt. *Suffolk Savings Bank* as bearing directly on the case at bar, and it furnishes a direct adjudication in favor of the the plaintiff's recovery.

Neither the legislature nor the courts have power to confer jurisdiction on surrogates over the estates of living persons. The foundation of the theory of distribution of estates whether under statutes of distribution or according to provisions of wills, rests upon the event of death.

"No person shall be deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use without just compensation." The substance of these provisions has been incorporated in all our state constitutions. They are simple and comprehensive, and I do not perceive that they derive any additional force or meaning by any historical review of the many learned disquisitions of jurists on the causes and sources of their origin. These provisions mean whenever the citizen acquires rights under the existing fundamental law there is no authority given to the law-making power to take them away. In this state, as in others, they are imposed as restraints upon the legislature, and whenever the rights of property are admitted to exist the legislature cannot say they shall exist no longer; nor will it make any difference even though a tribunal like the surrogate's court should be appointed to

pronounce the judgment. BRONSON, C. J., in *Taylor* agt. *Porter* (4 *Hill*, 146) says: "It must be ascertained judicially that he (the citizen) has forfeited his privileges, or that some one else has a superior right to the property he possesses, before either of them can be taken from him. It cannot be done by mere legislation."

I cannot find any definition of property which does not include the power of disposition and sale as well as the right of private use and enjoyment. BLACKSTONE says (1 *Com.*; 138): "The third absolute right of every Englishman is that of property, which consists in the free use and enjoyment and disposal of all his acquisitions without any control, diminution, save only by the laws of the land." Chancellor KENT says (2 *Com.*, 320): "The exclusive right of using and transferring property follows as a natural consequence from the perception and admission of the right itself;" and again (*p.* 326): "The power of alienation of property is a necessary incident to the right, and was dictated by mutual convenience and mutual wants."

The object of the constitution is not to grant legislative power, but to confine and restrain it. Without the constitutional limitation the power of the legislature to make laws would be absolute. It follows from these elementary principles that property is sacred and inviolable in the possession of living persons, and is equally so by transmission on their death whether by will or intestacy. The power of granting of probating or conferring any jurisdiction on the legislature over the estate of a living being comes within the constitutional prohibition and is absolutely void, and no act of the legislature can give it validity.

The plaintiff must have judgment for the amounts claimed in both cases and interest, with costs.