By the Court.—Freedman, J.
—The court of appeals has held that the surrogate, in granting lettters upon the estate of the plaintiff, who was not then dead, acted judicially ; that under the statutes of thM State, he had'jurisdiction to issue the letters upon a judicial inquiry and determination by him, that death had occurred; and hence, that the letters so granted protected the defendant as an innocent third party as to the amount paid to the administratrix on the faith of the letters, though they were, in fact, granted on false evidence.
This determination was made upon the construction of the statutes of this State regulating the jurisdiction and proceedings of surrogates’ courts, and it was held, that the said statutes furnish a complete system ; that in enacting the same, the legislature intended to confer upon surrogates’ courts sole and exclusive jurisdiction over the subject of granting letters of administration, and as part of that jurisdiction to determine, upon sufficient evidence, the facts upon which their action must rest; that, if the case be a proper one, the surrogate must act and issue letters ; and that thereupon the letters so issued are conclusive evidence of the authority of the administrator, until reversed on appeal or revoked.
The conclusion was reached by a vote of four to three, and in the prevailing opinion of Earl, J., it was conceded that the question decided was not free from doubt; that a decision either way would be confronted with some authority, and meet with some logical difficulties.
*226 As far as it goes, the decision, rests upon the assumption that there was a judicial inquiry into, and determination of, the question of death, by the surrogate, in due course of judicial proceedings.
It has now been shown, however, and the court below has found as facts, that the'petition was presented, not to the surrogate, but to the clerk in the office of the surrogate, who was entrusted by the latter with the duty of entertaining such applications ; that said clerk drew up the petition, swore the applicant thereto, passed upon the sufficiency of the evidence presented, and thereupon either himself filled up, or caused another clerk to fill up, a printed blank form of letters of administration signed in "blank by the then surrogate of the city and county of Hew York ; that upon said blank being filled up, said first-named clerk attached thereto the seal of said surrogate’s court, and delivered the same to the applicant upon the execution by her of the bond required by statute ; and that the then surrogate of the county of Hew York neither saw the applicant, nor the petition, nor the letters of administration, after the same had been filled out as aforesaid, and gave no instructions in respect to or regarding the issuing of the said letters. ’
Upon these facts and findings, which were not before the court of appeals, and plaintiffs’ exceptions to the main conclusions of law found by the learned judge below, two important questions arise,—namely, first, as to the competency of the testimony establishing these facts, and secondly, as to the effect to be given to the facts as found.
As to the competency: The court of appeals having held that the jurisdiction to issue letters in this case depended, not on death in fact, but on the judicial determination of the surrogate, made after a judicial inquiry, that death had occurred, it seems to follow as a logical and necessary conclusion, that if there were *227 no such judicial inquiry and determination, the fact on which the jurisdiction to issue the letters depends, is wanting, and the letters are without jurisdiction, and void.
Such want of jurisdiction may be shown by proof outside of the record, for no court, no matter how general its jurisdiction may be, which proceeds without jurisdiction in a particular case, can make a valid record, or confer any rights.
In Bolton v. Jacks, 6 Robt. 166, in which case the authorities on this point were examined by this court with great particularity, the rule was stated as follows : “Want of jurisdiction will render void the judgment of any court, whether it be of superior or inferior, of general, limited or local jurisdiction, or of record or not; and the bare recital of jurisdictional facts in the record of a judgment of any court, whether superior or inferior, of general or limited jurisdiction, is not conclusive, but only primafacie evidence of the facts recited; and the party against whom a judgment is offered, is not, by the bare fact of such recitals, estopped from showing, by affirmative facts, that they were untrue.”
In Boiler v. The Mayor, &c., 40 N. Y. Superior Ct. 523, this court was called upon to, and did, re- • examine the rule thus laid down, in the light of the criticism which Bolton v. Jacks had undergone in the court of appeals in the case at bar, and the conclusion was reached that, though the soundness of the decision was impugned in so far as it proceeded upon the assumption that the habitation of a testator at the time of his death was a jurisdictional fact, which, if erroneously decided by the surrogate in admitting a will to probate, might be collaterally attacked,* the correct *228 ness of the rule itself, as above stated, was not questioned.
It having therefore been already decided that there is nothing in the language of the court of appeals in the case at bar inconsistent with the general doctrine of Bolton v. Jacks, the case last referred to must be considered as a controlling authority in favor of the competency of the testimony adduced by the plaintiff in opposition to the letters relied upon by the defendant.
As to the effect of the testimony: Surrogates’ courts *229 are courts of limited and special jurisdiction, and yet their jurisdiction to grant administration upon the estates of deceased persons is general and exclusive.
With respect to courts having general jurisdiction, the intendment of law is always in favor of the validity of their judgments. In regard to tribunals of limited and special jurisdiction there is no such intendment, and every fact necessary to uphold their jurisdiction must either appear by the record, or be affirmatively shown by evidence aliunde. In either case the bare recital of jurisdictional facts in the record is not conclusive, but only prima facie evidence of the facts recited.
In the present case the defendant introduced no proof outside of the record relied upon showing a judicial inquiry and judicial determination, and of the record the letters of administration simply recite the fact that Martha Divine departed this life intestate, which is not enough, as it has been determined that jurisdiction does not depend upon the existence of that fact, but upon a judicial determination of it made in the course of judicial inquiry.
This record and all presumptions properly arising therefrom, if any, the plaintiff meets with proof showing that whatever inquiry was made, was made, not by the judicial officer clothed with the powers of the surrogate, but by his clerk ; that whatever determination was had, was made in the like manner ; and that all this was done by said clerk, in the absence of the surrogate and without consultation with or instructions from him so far as this particular case is concerned.
Even if it be claimed, therefore, that as regards the letters in question the same presumption attaches as to jurisdiction and regularity that attaches in any other case to the judgment record of a court of original and general jurisdiction,—and this is the theory most favorable to the defendant,—the presumption,. it seems to *230 me, has been completely destroyed by affirmative and uncontradicted testimony to the contrary.
I concede that if the proof simply showed an erroneous or negligent or improper performance by the surrogate of his duty after he had acquired jurisdiction, the letters so issued would be good iñ law.
But the proof goes beyond that. It shows that he did not act judicially at all; that he refused to act in such cases ; that he considered the examination of the petition a mere ministerial function, and that he delegated that function to the clerk. Such delegation might not be open to legal objection, if the jurisdiction of the surrogate in issuing letters depended, as has been heretofore supposed, on the fact of death. But as the court of appeals has determined that the surrogate must act judicially, and that his jurisdiction in issuing letters depends upon a judicial determination to be made by him in the course of a judicial inquiry, the delegation of power referred to cannot be sustained, any more than the practice could be sustained, if the judges of a court of original and general jurisdiction were to authorize the clerk of their court, upon presentation of applications sufficient in form, to pass upon the sufficiency of the evidence produced, and the sureties offered, and if deemed sufficient, to fill up and issue orders of arrest, injunction, appointment of Receivers, and warrants of attachment,'Kyrhich had been previously signed by them in blank.
Judicial power cannot be delegated, because it involves the exercise of judgment and discretion (Powell v. Tuttle, 3 Comst. 396.; Keeler v. Frost, 22 Barb. 400).
True, a rrimisterial officer is protected in the execution of process whether the same issue from a court of limited or general jurisdiction, if the subject-matter of the suit is within that jurisdiction, and nothing appears upon the face of the process to show that the *231 person was not also within it, although the court have not, in fact, jurisdiction in the case (Savacool v. Boughton, 5 Wend. 171). And in Chegaray v. Jenkins (1 Seld. 376), this principle was extended to a constable acting under a warrant in due form, issued by the receiver of taxes of the city of New York, and directing the collection of a tax.
But this protection is confined strictly to ministerial officers who have no discretion, but are bound by law to execute the process entrusted to them. As to all other parties, the record, and the process issued thereon, may be impeached for want of jurisdiction. In Stanton v. Schell (3 Sandf. 323), cited by defendant’ s counsel, the judge had acquired jurisdiction under the non-imprisonment act, and hence it was held that subsequent errors of judgment did not oust him of his jurisdiction, nor subject him or the applicant to an action of trespass or false imprisonment.
It is insisted, however, that the proceedings before, and the action by the clerk in question, coupled with the surrogate’s own signature and seal, were a sufficient compliance with the statute; and in support of this proposition reference is made to ch. 201 of Laws of 1850. By that statute power is conferred upon the assistants appointed by the surrogate of the city and- county of New York, to administer and certify oaths and affirmations in all cases in which said surrogate is authorized to administer the same. By § 62 of ch. 460 of the Laws of 1837 a surrogate was authorized to administer oaths in all cases where it might be necessary in the .exercise of the powers and duties of such surrogate, and the power given to the assistants or clerks named in the statute of 1850 is that given to the surrogates by the act of 1837. It is a mere ministerial power, which was conferred for the purpose of relieving the surrogate of the city and county of New York from the detail of mere clerical duty, and that is the extent *232 of it as construed by the surrogate himself in the case of Daniel Clarke (1 Tucker, 119). But it does not include or confer authority to make a judicial inquiry or render a judicial determination.
The surrogate of the city and county of ¡New York is a constitutional officer, and to be elected. No provision of law exists which enables him to delegate his judicial functions to subordinates, nor can any existing statute be construed to work that result.
The case as now presented differs from that presented to the court of appeals in the particulars herein discussed, and the judgment appealed from cannot be sustained upon the facts as found.
The judgment should be reversed and a new trial ordered with costs to the appellant to abide the event.
Sanford, J., concurred.

 The criticism here alluded to is to found in Judge Earl’s opinion (63 N. Y. 469), and is as follows: “In Bolton v. Jacks (6 Robertson’s Sup. Ct. R.), there is a learned discussion of the question of the jurisdiction of courts, and it was there held that if a surrogate *228 admitted to probate a will of a testator, not at the time of his death an inhabitant of his county, he acted without jurisdiction, and that his proceeding was void and could be attacked collaterally. I believe the decision to be unsound in this respect.”
It may be suggested that neither the reasoning which led the learned judge to the conclusion he arrived in the case then under consideration by him, nor the principle on which the decision of that case rests, affords ground for the criticism.
The case of Roderigas turned upon and was decided wholly on the effect of' section 26, art. 2, title 2, chap. 6, part 2, R. S., which the court held invested the surrogate with power to judicially inquire and examine as to the death of any person upon whose estate letters of administration were applied for, and to judicially determine as to such death; and that his judicial determination of death was conclusive, even though the fact were otherwise. The court, agreed that were it not for this section and the effect given it, jurisdiction would depend on death in fact.
This section of the R. S. has no application to the proof of wills.
The provision concerning the proof of wills is to be found in chapter 460 of the Laws of 1837, at p. 524.
Neither in that chapter nor in any other statute, is there any section or provision requiring the surrogate to inquire into the habitancy of the testator, or imposing on him any duty to make such inquiry, or authorizing or requiring him either to examine witnesses on that subject or to subpoena, or authorizing or requiring him to make any determination on that subject.
It would seem that a decision and reasoning founded on said section 26 of the R. S. cannot affect or impugn a decision made in a case to which that section has no application, and as to which there is no similar provision.

Note.—This case having attracted so much attention in legal circles, and the decision of the court of appeals having' been reviewed in the American Law Review, vol. 10, No. 4, p. 787, and also in the American Law Register, N. S., vol. 15, p. 312, it has been deemed proper to publish with the foregoing general term opinion, the special term opinion rendered on the first trial of the cause, which was concurred in by the general term, it not having been heretofore published.
The following is the opinion:
“Speer, J.—The question in the case is, Had the surrogate jurisdiction to grant ,the letters of administration which protect the defendants in making the payments to Isabella McNeil ? The only justification for doing so as claimed is, that they paid upon the strength of the letters issued by the surrogate of the city and county of New York. It must be conceded if he had no jurisdiction it would be no protection.
‘1 The defendants claim through their counsel, in order to sustain the surrogate’s jurisdiction for their protection, chiefly upon the ground that the State appoints, by judicial authority, certain persons, who upon the death of an' individual, administer upon his personal property, and although the State does not profess to administer it unless the individual be in fact dead, there are many cases where the question of death, like other questions of fact, is difficult of ascer *233 tainment, and that in such cases it is within the legitimate province of the State, on presumptive proof of death, to authorize administration on his estate, establish, tribunals to take such proof, providing safeguards sufficient to make the sanction of its judicial authority a protection to third parties.
“They claim that the State of New York has done this, and the cases at bar are to be determined by its statutory law alone.
“Section 26, article 2, title 2, ch. 6, vol. 2, R. S. (Edmonds' Ed.) p. 75, is relied on. ‘ Before any letters of administration shall be granted on the estate of any person who shall have died intestate, the fact of such person dying intestate shall be proved to the satisfaction of the surrogate, who shall examine the persons applying for such letters on oath touching the time, place, and manner of'the death, and whether or not the party dying left any will; and he may also in like manner examine any other person, and may compel such person to attend as a witness for that purpose.’
“Again, it is provided that ‘the letters testamentary and of administration and letters appointing a collector, granted by any officer having jurisdiction, shall be conclusive evidence of the authority of the persons to whom the same may be granted, until the same shall toe reversed on appeal, or revoked as in the chapter provided ’ (2 R. S. 80, § 56).
“In section 26 it is assumed by the very letter of the statute, that the proceedings take place only when ‘ any person shall have died intestate, ’ the fact of such person dying intestate shall be proved to the satisfaction of the surrogate.
“The court is not authorized to act except when the fact exists that the person shall have died intestate.
“The court is set in motion by the admitted jurisdiction that such person has died intestate, and the proceedings are carried forward only upon that assumption. So in section 56, the proviso is that certain letters issued by an officer having jurisdiction shall be conclusive, &c. This the defendant’s counsel says means 1 granted by the proper officer, and on proper proceedings taken before him, and if it means that the letters are a protection only in case the proof before the surrogate was conclusive, the section is useless.’
“With great respect I think the learned counsel assumes the premises for the sake of his deduction—jurisdiction here is conceded, and therefore the surrogate is authorized to issue certain letters, but it does not follow that he has authority to issue them under all circumstances, and much less where he has not the acquired jurisdiction. Nor, in logical terms, can the section be said to be useless, for the court acting within the sphere of its original authority, the letters *234 issued by an officer acting under such authority should be taken r.s conclusive, both as a useful and orderly proceeding on well settled principles.
“Section 47, 2 R. S. 70, is claimed to cover the whole ground assumed by the defendants. It is in the words following : ‘ All sales made in good faith, and all lawful acts done either by administrators before notice of a will, or by executor's or administrators who may be removed or superseded, or who may become incapable, shall remain valid and shall not be impeached on any will afterwards appearing, or by any subsequent revocation or superseding of the authority of such executors or administrators.’
“ This section, like all others on this subject, is founded upon the fact that the surrogate shall and must have jurisdiction over the subject matter before he could deliberate on the case.
‘1 The proper surrogate obtains control over the personal estate of deceased persons only upon their death. y
‘ ‘ He acts upon the estate, either through administrators according to the statute of distributions, or through executors according to the provisions of a will.
“ Having acquired jurisdiction by the event of death, the "question whether there was a will or not as determining the mode of distribution, falls within his province, and his action either in granting letters of administration or probating a will, as the case may be, cannot be attacked collaterally. By the actual facts of death and inhabitancy, the surrogate acquires jurisdiction over the whole subject; and his actionin granting letters of administration cannot be attacked for want of jurisdiction. In case of a will being subsequently proven, relief tiould be obtained by application to the surrogate himself for a revocation of the letters of administration, in which case, as the grant of letters of administration was avoidable only, the acts done under it would be valid. In Prosser v. Wanger, 1 Com. B. N. S. 289, both the death of the party and the granting the letters by the proper officer was conceded. See also Sheldon v. Wright, 5 N. Y. 497, as to the necessary result of the principles there laid down. The statute of 1870, 1 Laws of 1870, p. 826, is also referred to as sustaining defendant’s position. "He claims that it being remedial it may well retroact.
“ The answer to this is, that ‘All lawful orders and decrees in proceedings in the surrogate’s court . . . and the objection of want of jurisdiction, except by appeal in the manner prescribed by statute, &c.,’ relate only to the case where such original jurisdiction has been acquired, and is to be construed in harmony with other statutes on the subject (1 Kent’s Com. p. 524, 525, 10 Ed.) I hope to show pre *235 sently it is not in the power of the legislature to confer jurisdiction on a surrogate over the estates of a living person.
“In the case at bar the parties not being dead, all the proceedings were totally void, and consequently the payment to an executor or administrator appointed where the supposed testator or intestate Is alive, would not be a discharge of the debt.
“I think it may well be conceded that upon evidence being furnished, according to the rules and principles of evidence and the law, establishing the fact of death and of intestacy, the surrogate would be bound to Issue letters, but this is done at the peril of the applicant in case death should not in fact have occurred. But as already shown, a compliance with such duties never, by the statutes of this State, gives him jurisdiction when the supposed intestate or testator was in actual being. The surrogate must always inquire and decide whether the person whose estate is to he committed to the care of others be dead or in life. Yet, bis decision that the person ■on whose estate he acts is dead, if the fact be otherwise, does not invest the person he may appoint with the character or power of an administrator. The case is not within his' jurisdiction (Griffith v. Frazer, 8 Cranch, 9, Opinion of Marshall, C. J.).
“ The defendants’ counsel’s position is, that admitting there are cases in the hooks to the effect that administration granted during the lifetime of a person upon Ms estate is void, because the ecclesiastical courts have jurisdiction only in the estate of dead persons (Allen v. Dundas, 3 T. R. 125 Griffith v. Frazer, 8 Cranch, 24), yet they do not override the statute of New York, which provides for a judicial inquiry into the fact of death, and that there is Ho New York ease which decides otherwise.
“ I think the assertion too broad and not well considered. Sections 3 and 5 of chapter 79 of the Laws of 1813 (Laws 1813, p. 445) are analogous to those before cited. Section 5 of the act of 1813 is in substance the same as section 26 of R. S. In fact, the act of 1813 goes further than the R. S., for it requires in express terms that satisfactory proof shall be made of the death of the party, as well as that he died intestate, while R S. does not require proof of the death of the party except as going to establish the fact required to be proved,— that is, that the party died intestate.
“ The court of appeals held, in Sheldon v. Wright, 5 N. Y. 497, 510-512, that this provision in section 5 of the act of 1813 was merely directory, and did not affect the surrogate’s jurisdiction, but that Ms jurisdiction depended on the actual existence in fact, first?, of the death of the person, and, second, that at bis death he was an inhabitant of the county in which the surrogate who issued the letters *236 was empowered to act. It clearly appears by reference to sections 3 and 5 of the act of 1813, that upon the existence of the above "two facts, the same surrogate, who would, in case there was no will, have power to grant letters of administration, would, if there were a will, have power to probate it and issue letters testamentary thereon. In Sheldon v. Wright, the non-existence of a will is not put as one of the facts on the actual existence of which the jurisdiction to issue letters of administration depends, and the actual existence of the will is not one of the facts on which the jurisdiction to admit a paper purporting to be a will to probate, and to issue letters testamentary thereon, depends. If neither one of the above two matters does not aetualbj exist as matters of fact, the surrogate is without jurisdiction, while if both do exist as matters of fact, the same surrogate has complete jurisdiction over the whole subject, either to grant letters of administration or letters testamentary, as the case may require, and his action in granting one or the other could not be attacked for want of jurisdiction, but could be reversed or modified only by a court of review or in pursuance of sound statutory remedy. See decision of the case of Sheldon v. Wright, by the learned judge in Bolton v. Jacks, 6 Robertson, 281-232.
“The above provisions of the Revised Statutes did not cover the case of a will, but the act of 1837 did, and the two together give to the surrogate precisely the same jurisdiction as the act of 1818, with but one substantial difference, viz., the act of 1813 gives no jurisdiction to grant letters of administration, or to admit wills to probate in certain cases when the decedent was not an inhabitant of this State.
“ The additional clauses in section 26 of Revised Statutes respecting the examination of a party on oath, and the subpoenaing and compelling the attendance of witnesses, are merely express enactments of power implied in the direction given by section 5 of the act of 1813, being necessary to a compliance with such direction (1 Kent's Com. 525, 10th Ed.). The case of Sheldon v. Wright seems to me to be an exposition of the law of this State on this subject, and .controlling over the case at bar.
“At common law, administration 'granted upon the estate of a person in life was wholly void, even though granted by a court which had full power and jurisdiction over the granting of letters of administration (Allen v. Dundas, 3 T. R. 125 ; Griffith v. Frazer, 8 Cranch, 1 ; Joachimson v. Suffolk Savings Bank, 3 Allen, 87).
“ The above and cases therein cited are directly in point. The case in 3 Allen rests its decision upon the principles of the English laws, and does not depend upon any peculiar statute. The cases of Carter v. Buchanan, 2 Kelly, 337 ; Noel v. Wells, 1 Lewis, S. R. 235, *237 and Prosser v. Wagner, 1 Com. B. N. S. 387, referred to by the defendant’s counsel, do not apply the case at bar. The party, whose will was offered for probate, being conceded to be dead, the question whether the paper propounded was his will or not, was the question which the court was authorized to determine.
“ It is difficult to break the force of the case of Joachimson v. Suffolk Savings Bank, as bearing directly on the case at bar, and it furnishes a direct adjudication in favor of the plaintiff’s recovery. Neither the legislature nor the courts have power to confer jurisdiction on surrogates over the estates of living persons. The foundation of the theory of distribution of estates, whether under statutes of distribution or according to provisions of wills, rests upon the event of death. ‘ No person shall be deprived of life, liberty or "property without due process of law, nor shall private property be taken for public use without just compensation.’ The substance of these provisions have been incorporated in all our State constitutions. They are simple and comprehensive, and I do not perceive that they derive any additional force or meaning by any historical review of the many learned disquisitions of jurists on the causes and sources of their origin. These provisions mean, that whenever the citizen acquires rights under the existing fundamental law, there is no authority given to the law-making power to take them away. In this State, as in others, they are imposed as restraints upon the legislature, and whenever the rights of property are admitted to exist, the legislature cannot say they shall exist no longer, nor will it make any difference, even though a tribunal like the surrogate’s court should be appointed to pronounce the judgment. Bronson, C. J., in Taylor v. Porter, 4 Hill, 146, says : 1 It must be ascertained judicially that he (the citizen) has forfeited his privileges, or that some one else has superior rights to the property ho possesses, before either of them can be taken from him. It cannot be done by mere legislation.’
“I cannot find any definition of property which does not include . the power of disposition and sale as well as the right of private use and enjoyment. Blackstone says (1 Com. 138) ; ‘The third absolute right of every Englishman is that of property, which consists in the free use and enjoyment and disposal of all his acquisitions without any control, or diminution, save only by the laws of the land.’ Chancellor Kent says (3 Com. 320) : ‘ The exclusive right of using and transferring property follows as a natural consequence from the perception and admission of the right itself ; ’ and, again (p. 326) : ‘ The power of alienation of property is a necessary incident to the right, and was dictated by mutual convenience and mutual wants.’
“The object of the constitution is not to grant legislative power, *238 but to confine and restrain it; without the constitutional limitation, the power of the legislature to make laws would be absolute.
“It follows, from these elementary principles, that property is sacred and inviolable in the possession of living persons, and is equally so by transmission on their death, whether by will or intestacy.
“ The power of the legislature to confer on a surrogate any jurisdiction over the estate of a living being, comes within the constitutional prohibition, and is absolutely void, and no act of the legislature can give it validity.
“The plaintiff must have judgment for the amounts claimed in both cases, and interest, with costs.